98

(No. 66089.—

*In re* E.G., a Minor (The People of the State of Illinois, Appellant, v. E.G., a Minor, Appellee).

*Opinion filed November 13, 1989.—Rehearing denied January 29, 1990.*

100

WARD and CLARK, JJ., dissenting.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr.,

Kenneth T. McCurry, Kim A. Novi, Inge Fryklund, Renee Goldfarb and James E. Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

Jane M. Whicher, Harvey Grossman and Diane Geraghty, of Chicago, for appellee.

Donald T. Ridley, of Brooklyn, New York, for *amicus curiae* Watchtower Bible and Tract Society of New York, Inc.

JUSTICE RYAN delivered the opinion of the court:

Appellee, E.G., a 17-year-old woman, contracted leukemia and needed blood transfusions in the treatment of the disease. E.G. and her mother, Rosie Denton, refused to consent to the transfusions, contending that acceptance of blood would violate personal religious convictions rooted in their membership in the Jehovah's Witness faith. Appellant, the State of Illinois, filed a neglect petition in juvenile court in the circuit court of Cook County. The trial court entered an order finding E.G. to be neglected, and appointed a guardian to consent to the transfusions on E.G.'s behalf.

The appellate court reversed the trial court in part. The court held that E.G. was a "mature minor," and therefore could refuse the blood transfusions through the exercise of her first amendment right to freely exercise her religion. Nevertheless, the court affirmed the finding of neglect against Denton. 161 Ill. App. 3d 765.

We granted the State's petition for leave to appeal and now affirm the appellate court's decision in part, but on other grounds. We also remand this case to the trial court for the purpose of expunging the finding of neglect.

In February of 1987, E.G. was diagnosed as having acute nonlymphatic leukemia, a malignant disease of the white blood cells. When E.G. and her mother, Rosie Den-

ton, were informed that treatment of the disease would involve blood transfusions, they refused to consent to this medical procedure on the basis of their religious beliefs. As Jehovah's Witnesses, both E.G. and her mother desired to observe their religion's prohibition against the "eating" of blood. Mrs. Denton did authorize any other treatment and signed a waiver absolving the medical providers of liability for failure to administer transfusions.

As a result of Denton's and E.G.'s refusal to assent to blood transfusions, the State filed a neglect petition in juvenile court. At the initial hearing on February 25, 1987, Dr. Stanley Yachnin testified that E.G. had approximately one-fifth to one-sixth the normal oxygen-carrying capacity of her blood and consequently was excessively fatigued and incoherent. He stated that without blood transfusions, E.G. would likely die within a month. Dr. Yachnin testified that the transfusions, along with chemotherapy, achieve remission of the disease in about 80% of all patients so afflicted. Continued treatment, according to Dr. Yachnin, would involve the utilization of drugs and more transfusions. The long-term prognosis is not optimistic, as the survival rate for patients such as E.G. is 20 to 25%.

Dr. Yachnin stated that he discussed the proposed course of treatment with E.G. He testified that E.G. was competent to understand the consequences of accepting or rejecting treatment, and he was impressed with her maturity and the sincerity of her beliefs. Dr. Yachnin's observations regarding E.G.'s competency were corroborated by the testimony of Jane McAtee, the associate general counsel for the University of Chicago Hospital. At the conclusion of this hearing, the trial judge entered an order appointing McAtee temporary guardian, and authorizing her to consent to transfusions on E.G.'s behalf.

On April 8, 1987, further hearings were held on this matter. E.G., having received several blood transfusions, was strong enough to take the stand. She testified that the decision to refuse blood transfusions was her own and that she fully understood the nature of her disease and the consequences of her decision. She indicated that her decision was not based on any wish to die, but instead was grounded in her religious convictions. E.G. further stated that when informed that she would undergo transfusions, she asked to be sedated prior to the administration of the blood. She testified that the court's decision upset her, and said: "[I]t seems as if everything that I wanted or believe in was just being disregarded."

Several other witnesses gave their opinions extolling E.G.'s maturity and the sincerity of her religious beliefs. One witness was Dr. Littner, a psychiatrist who has special expertise in evaluating the maturity and competency of minors. Based on interviews with E.G. and her family, Dr. Littner expressed his opinion that E.G. had the maturity level of an 18 to 21 year old. He further concluded that E.G. had the competency to make an informed decision to refuse the blood transfusions, even if this choice was fatal.

On May 18, 1987, the trial court ruled that E.G. was medically neglected, and appointed a guardian to consent to medical treatment. The court felt this was in E.G.'s best interests. The court did state, however, that E.G. was "a mature 17-year-old individual," that E.G. reached her decision on an independent basis, and that she was "fully aware that death [was] assured absent treatment." The court noted that it considered E.G.'s maturity and the religion of her and her parents, and that it gave great weight to the wishes of E.G. Nevertheless, the court felt that the State's interest in this case was greater than the interest E.G. and her mother

had in refusing to consent to treatment. The court concluded its ruling by encouraging E.G. to appeal.

On appeal, the order of the trial court pertaining to E.G.'s right to refuse treatment was vacated in part and modified in part. (161 Ill. App. 3d 765.) The appellate court observed that this court, in *In re Estate of Brooks* (1965), 32 Ill. 2d 361, held that an adult Jehovah's Witness had a first amendment right to refuse blood transfusions. The appellate court then extended the holding in *Brooks* to include "mature minors," deriving this extension from cases in which the United States Supreme Court allowed "mature minors" to consent to abortions without parental approval through the exercise of constitutional privacy rights. (See *City of Akron v. Akron Center for Reproductive Health, Inc.* (1983), 462 U.S. 416, 76 L. Ed. 2d 687, 103 S. Ct. 2481; *Bellotti v. Baird* (1979), 443 U.S. 622, 61 L. Ed. 2d 797, 99 S. Ct. 3035.) Although the United States Supreme Court has not broadened this constitutional right of minors beyond abortion cases, the appellate court found such an extension "inevitable." Relying on our Emancipation of Mature Minors Act (Ill. Rev. Stat. 1987, ch. 40, par. 2201 *et seq.*), the court held that a mature minor may exercise a constitutional right to refuse medical treatment.

The appellate court noted that E.G., at the time of trial, was only six months shy of her eighteenth birthday, and that the trial court believed E.G. to be a mature individual. Based on these facts, the appellate court declared that E.G. was partially emancipated and therefore had the right to refuse transfusions. The court, however, affirmed the finding of neglect against Denton, E.G.'s mother.

We granted the State's petition for leave to appeal under our Rule 315 (107 Ill. 2d R. 315). This case presents several issues for our consideration: (1) whether this appeal should be dismissed as moot, since E.G.

turned 18 on November 25, 1987, and is no longer a minor; (2) whether a minor has a right to refuse medical treatment and if so, how this right may be exercised; and (3) whether the trial court's finding of neglect against Denton should stand.

Both parties agree that although this case is technically moot, it should not be dismissed. Normally, this court will not adjudicate an appeal where a live controversy no longer exists. (*People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273, 276; *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231, 234-35.) Here, since E.G. has reached her eighteenth birthday, she can no longer be adjudged a neglected minor for the purpose of the Juvenile Court Act of 1987. (See Ill. Rev. Stat. 1987, ch. 37, par. 802—3.) We do not review cases merely to guide future litigation or establish precedent. (*Madison Park Bank*, 91 Ill. 2d at 235.) Where no present controversy exists between the parties, a case should be dismissed as moot. 91 Ill. 2d at 235.

Nevertheless, there are exceptions to the mootness doctrine. One departure from the usual rule occurs when a case presents an issue of substantial public interest. (*In re Estate of Brooks* (1965), 32 Ill. 2d 361, 364-65; *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 622-23.) In determining whether a case exhibits the requisite degree of public interest, we look to "the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." (411 Ill. at 622.) We note that both *Labrenz* and *Brooks* involved Jehovah's Witness members who refused to consent to blood transfusions. In *Labrenz* and *Brooks*, this court concluded that significant public interest existed and, although the controversies were moot, decided the cases on the merits. Similarly, we find that the case before us meets the public interest excep-

tion criteria quoted above from *Labrenz*. Consequently, we will consider the issues raised by the parties in this case.

The paramount issue raised by this appeal is whether a minor like E.G. has a right to refuse medical treatment. In Illinois, an adult has a common law right to refuse medical treatment, even if it is of a life-sustaining nature. (See *In re Estate of Longeway* (1989), 133 Ill. 2d 33.) This court has also held that an adult may refuse life-saving blood transfusions on first amendment free exercise of religion grounds. (*In re Estate of Brooks* (1965), 32 Ill. 2d 361.) An infant child, however, can be compelled to accept life-saving medical treatment over the objections of her parents. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618.) In the matter before us, E.G. was a minor, but one who was just months shy of her eighteenth birthday, and an individual that the record indicates was mature for her age. Although the age of majority in Illinois is 18, that age is not an impenetrable barrier that magically precludes a minor from possessing and exercising certain rights normally associated with adulthood. Numerous exceptions are found in this jurisdiction and others which treat minors as adults under specific circumstances.

In Illinois, our legislature enacted "An Act in relation to the performance of medical, dental or surgical procedures on and counseling for minors" (the Consent by Minors to Medical Operations Act), which grants minors the legal capacity to consent to medical treatment in certain situations. (See Ill. Rev. Stat. 1987, ch. 111, par. 4501 *et seq*.) For example, a minor 12 years or older may seek medical attention on her own if she believes she has venereal disease or is an alcoholic or drug addict. (Ill. Rev. Stat. 1987, ch. 111, par. 4504.) Similarly, an individual under 18 who is married or pregnant may validly consent to treatment. (Ill. Rev. Stat. 1987, ch. 111, par.

4501.) Thus, if E.G. would have been married she could have consented to or, presumably, refused treatment. Also, a minor 16 or older may be declared emancipated under the Emancipation of Mature Minors Act (Ill. Rev. Stat. 1987, ch. 40, par. 2201 *et seq.*), and thereby control his or her own health care decisions. These two acts, when read together in a complementary fashion, indicate that the legislature did not intend that there be an absolute 18-year-old age barrier prohibiting minors from consenting to medical treatment.

In an analogous area of law, no "bright line" age restriction of 18 exists either. Under the Juvenile Court Act, individuals much younger than 18 may be prosecuted under the Criminal Code, if circumstances dictate. (See Ill. Rev. Stat. 1987, ch. 37, par. 805—4.) Furthermore, to be convicted of many of the offenses in the Criminal Code, a trier of fact would have to find that a minor had a certain mental state at the time the alleged crime was committed. Implied in finding this mental state would be an acknowledgment that a minor was mature enough to have formulated this *mens rea.* Consequently, the Juvenile Court Act presupposes a "sliding scale of maturity" in which young minors can be deemed mature enough to possess certain mental states and be tried and convicted as adults. This act reflects the common law, which allowed infancy to be a defense to criminal acts. The infancy defense at common law was "based upon an unwillingness to punish those thought to be *incapable of forming criminal intent* and not of an age where the threat of punishment could serve as a deterrent." (Emphasis added.) (W. LaFave & A. Scott, Criminal Law §46 (1972).) When a minor is mature enough to have the capacity to formulate criminal intent, both the common law and our Juvenile Court Act treat the minor as an adult.

Another area of the law where minors are treated as adults is constitutional law, including the constitutional right of abortion. The United States Supreme Court has adopted a mature minor doctrine, which allows women under the age of majority to undergo abortions without parental consent. (See *City of Akron v. Akron Center for Reproductive Health, Inc.* (1983), 462 U.S. 416, 76 L. Ed. 2d 687, 103 S. Ct. 2481; *Bellotti v. Baird* (1979), 443 U.S. 622, 61 L. Ed. 2d 797, 99 S. Ct. 3035.) In the abortion rights context, the Court has noted: "Constitutional rights do not mature and come into being magically only when one attains the state-defined age of majority. Minors, as well as adults, are protected by the Constitution and possess constitutional rights." (*Planned Parenthood of Central Missouri v. Danforth* (1976), 428 U.S. 52, 74, 49 L. Ed. 2d 788, 808, 96 S. Ct. 2831, 2843.) Moreover, children enjoy the protection of other constitutional rights, including the right of privacy (*Carey v. Population Services International* (1977), 431 U.S. 678, 52 L. Ed. 2d 675, 97 S. Ct. 2010), freedom of expression (*Tinker v. Des Moines Independent Community School District* (1969), 393 U.S. 503, 21 L. Ed. 2d 731, 89 S. Ct. 733), freedom from unreasonable searches and seizures (*New Jersey v. T.L.O.* (1985), 469 U.S. 325, 83 L. Ed. 2d 720, 105 S. Ct. 733), and procedural due process (*In re Application of Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428). Nevertheless, the Supreme Court has not held that a constitutionally based right to refuse medical treatment exists, either for adults or minors. While we find the language from the cases cited above instructive, we do not feel, as the appellate court did, that an extension of the constitutional mature minor doctrine to the case at bar is "inevitable." These cases do show, however, that no "bright line" age restriction of 18 is tenable in restricting the rights of mature minors, whether the rights be based on constitu-

tional or other grounds. Accordingly, we hold that in addition to these constitutionally based rights expressly delineated by the Supreme Court, mature minors may possess and exercise rights regarding medical care that are rooted in this State's common law.

The common law right to control one's health care was also the basis for the right of an incompetent patient to refuse life-sustaining treatment through a surrogate in *In re Estate of Longeway*, 133 Ill. 2d at 45-46. While the issue before us in this case is not exactly the same as in *Longeway*, the foundation of the common law right here and in *Longeway* is the same. We see no reason why this right of dominion over one's own person should not extend to mature minors. Furthermore, we find support for this conclusion in a decision of one of our sister States. In *Cardwell v. Bechtol* (Tenn. 1987), 724 S.W.2d 739, the Tennessee Supreme Court held that a mature minor had the capacity to consent to medical procedures based on the common law of that State. The court noted that the mature minor doctrine is not a recent development in the law: "[R]ecognition that minors achieve varying degrees of maturity and responsibility (capacity) has been part of the common law for well over a century." 724 S.W.2d at 744-45.

In *Cardwell*, the Tennessee court held that a minor 17 years, 7 months old was mature enough to consent to medical treatment. We note that in other jurisdictions, courts have ordered health care for minors over the objections of the minors' parents. These cases, however, involve minors who were younger than E.G. or the minor in *Cardwell*. (See, *e.g.*, *In re Eric B.* (1987), 189 Cal. App. 3d 996, 235 Cal. Rptr. 22 (six-year-old boy); *In the Interest of D.L.E.* (Colo. 1982), 645 P.2d 271 (16 year old); *In re Ivey* (Fla. App. 1975), 319 So. 2d 53 (one-month-old infant); *Morrison v. State* (Mo. App. 1952), 252 S.W.2d 97 (12-day-old child); *People v. Perricone*

(1962), 37 N.J. 463, 181 A.2d 751 (infant); *In re Custody of a Minor* (1978), 375 Mass. 733, 379 N.E.2d 1053 (two-year-old girl); *In re Willmann* (1986), 24 Ohio App. 3d 191, 493 N.E.2d 1380 (seven-year-old boy); *In re Hamilton* (Tenn. App. 1983), 657 S.W.2d 425 (12-year-old girl); *Mitchell v. Davis* (Tex. Civ. App. 1947), 205 S.W.2d 812 (12-year-old boy).) Moreover, the issue in the above cases was not whether a minor could assert a right to control medical treatment decisions, but whether the minor's parents could refuse treatment on behalf of their child. Here, E.G. contends she was mature enough to have controlled her own health care. We find that she may have done so if indeed she would have been adjudged mature.

The trial judge must determine whether a minor is mature enough to make health care choices on her own. An exception to this, of course, is if the legislature has provided otherwise, as in the Consent by Minors to Medical Operations Act (Ill. Rev. Stat. 1987, ch. 111, par. 4501 *et seq.*). We feel the intervention of a judge is appropriate for two reasons.

First, Illinois public policy values the sanctity of life. (*In re Estate of Longeway*, 133 Ill. 2d at 51; *Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230, 249.) When a minor's health and life are at stake, this policy becomes a critical consideration. A minor may have a long and fruitful life ahead that an immature, foolish decision could jeopardize. Consequently, when the trial judge weighs the evidence in making a determination of whether a minor is mature enough to handle a health care decision, he must find proof of this maturity by clear and convincing evidence.

Second, the State has a *parens patriae* power to protect those incompetent to protect themselves. (*Longeway*, 133 Ill. 2d at 52; 27 Am. Jur. 2d *Equity* §69 (1966).) "[I]t is well-settled that the State as *parens pa-*

*triae* has a special duty to protect minors and, if necessary, make vital decisions as to whether to submit a minor to necessary treatment where the condition is life threatening, as wrenching and distasteful as such actions may be." (*In re Hamilton* (Tenn. App. 1983), 657 S.W.2d 425, 429.) The State's *parens patriae* power pertaining to minors is strongest when the minor is immature and thus incompetent (lacking in capacity) to make these decisions on her own. The *parens patriae* authority fades, however, as the minor gets older and disappears upon her reaching adulthood. The State interest in protecting a mature minor in these situations will vary depending upon the nature of the medical treatment involved. Where the health care issues are potentially life threatening, the State's *parens patriae* interest is greater than if the health care matter is less consequential.

Therefore, the trial judge must weigh these two principles against the evidence he receives of a minor's maturity. If the evidence is clear and convincing that the minor is mature enough to appreciate the consequences of her actions, and that the minor is mature enough to exercise the judgment of an adult, then the mature minor doctrine affords her the common law right to consent to or refuse medical treatment. As we stated in *Longeway*, however, this common law right is not absolute. The right must be balanced against four State interests: (1) the preservation of life; (2) protecting the interests of third parties; (3) prevention of suicide; and (4) maintaining the ethical integrity of the medical profession. (*Longeway*, 133 Ill. 2d at 48, quoting *Superintendent of Belchertown State School v. Saikewicz* (1977), 373 Mass. 728, 741, 370 N.E.2d 417, 425.) Of these four concerns, protecting the interests of third parties is clearly the most significant here. The principal third parties in these cases would be parents, guardians, adult siblings, and other relatives. If a parent or guardian opposes an

unemancipated mature minor's refusal to consent to treatment for a life-threatening health problem, this opposition would weigh heavily against the minor's right to refuse. In this case, for example, had E.G. refused the transfusions *against* the wishes of her mother, then the court would have given serious consideration to her mother's desires.

Nevertheless, in this case both E.G. and her mother agreed that E.G. should turn down the blood transfusions. They based this refusal primarily on religious grounds, contending that the first amendment free exercise clause entitles a mature minor to decline medical care when it contravenes sincerely held religious beliefs. Because we find that a mature minor may exercise a common law right to consent to or refuse medical care, we decline to address the constitutional issue. See *Longeway*, 133 Ill. 2d at 44; see also *In re Application of Rosewell* (1983), 97 Ill. 2d 434, 440 (constitutional questions should not be considered if a case can be decided on other grounds).

The final issue we must address is whether the finding of neglect entered against Rosie Denton, E.G.'s mother, should stand. If the trial judge had ruled that E.G. was a mature minor, then no finding of neglect would be proper. Although the trial judge was impressed with E.G.'s maturity and sincerity, the judge did not explicitly hold that E.G. was a mature minor. The trial judge, guided only by the law as it existed prior to this opinion, rightly felt that he must protect the minor's health and well-being. This case is one of first impression with this court. Therefore, the trial judge had no precedent upon which to base a mature minor finding. Because E.G. is no longer a minor, nothing would be gained by remanding this case back to the trial court for an explicit determination of E.G.'s maturity. Nevertheless, since the trial judge did not have any clear guid-

ance on the mature minor doctrine, we believe that the finding of neglect should not stand. Accordingly, we affirm the appellate court in part and reverse in part, and remand this case to the circuit court of Cook County for the sole purpose of expunging the finding of neglect against Denton.

*Appellate court affirmed in part and reversed in part; circuit court reversed; case remanded with directions.*

JUSTICE WARD, dissenting:

I must respectfully dissent. I consider the majority has made an unfortunate choice of situations to announce, in what it calls a case of first impression, that a minor may with judicial approval reject medical treatment, even if the minor's death will be a medically certain consequence. The majority cites decisions where a minor was permitted to exercise what was called a common law right to consent to medical treatment. The safeguarding of health and the preservation of life are obviously different conditions from one in which a minor will be held to have a common law right, as the majority puts it, to refuse medical treatment and sometimes in effect take his own life. That violates the ancient responsibility of the State as *parens patriae* to protect minors and to decide for them, as the majority describes, vital questions, including whether to consent to or refuse necessary medical treatment. The majority also cites the decision in *In re Estate of Longeway* (1989), 133 Ill. 2d 33, for the proposition that an incompetent patient has a common law right to refuse life-sustaining treatment through a surrogate. As a dissent in *Longeway* points out, an incompetent person by definition lacks the capacity to refuse life-sustaining treatment and thereby choose death. The dissent observes that commentators

have commented that it is a self-satisfying fiction to say that the incompetent patient exercises a common law right to refuse treatment and die when the decision to refuse is obviously that of the surrogate guardian.

Unless the legislature for specific purposes provides for a different age, a minor is one who has not attained legal age. It is not disputed that E.G. has not attained legal age. It is a fundamental that where language is clear there is no need to seek to interpret or depart from the plain language and meaning and read into what is clear exceptions or limitations. The majority nevertheless would in effect define a minor in these grave situations to be one who has not attained legal age unless it is a "mature" minor who is involved. If so this protection that the law gives minors has been lost and the child may make his own decision even at the cost of his life. The majority acknowledges that this is a case of first impression. It may now be critically described by some as a holding without precedent. I point out again that this is not a holding where consent to treatment is the question but rather a unique one where a minor's injury or very self-destruction may be involved.

I am sure that in a host of matters of far lesser importance it would not be held that a minor however mature could satisfy a requirement of being of legal age. It would not be held that a minor was eligible to vote, to obtain a driver's or a pilot's license, or to enlist in one of the armed services before attaining enlistment age.

The trial court appointed a guardian to consent to transfusions for the minor. The appellate court reversed as to this, stating the minor was a mature minor. This court affirms the appellate court in this regard but does not attempt to state a standard by which "mature" is to be measured by judges in making these important findings.

JUSTICE CLARK, also dissenting:

I respectfully dissent from the majority's opinion because I do not believe that this case falls within any exception to the mootness doctrine. Accordingly, I would dismiss the case.

As the majority recognizes, and both parties agree, this case is moot. (133 Ill. 2d at 105.) Nevertheless, the parties argue that this court should address the merits of this appeal because the case falls within one of three exceptions to the mootness doctrine. These three exceptions are the "public interest" exception (see *George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 77); the "collateral consequences" exception (see *In re Christenberry* (1979), 69 Ill. App. 3d 565, 566-67); and the exception which allows review of cases which are capable of repetition yet evasive of review (see *In re a Minor* (1989), 127 Ill. 2d 247, 258).

The majority concludes that the public interest exception applies in this case. (133 Ill. 2d at 105-06.) This "limited exception[ ] to the mootness doctrine" (*George W. Kennedy Construction Co.*, 112 Ill. 2d at 77) "occurs when a case presents an issue of substantial public interest" (133 Ill. 2d at 105). A case presents an issue of substantial public interest if (1) the issue presented is public in nature, (2) an authoritative determination of the issue presented is desirable for the future guidance of public officials, and (3) it is likely that the issue presented will recur in the future. 133 Ill. 2d at 105.

The majority states that "[t]he paramount issue raised by this appeal is whether [an allegedly mature] minor like E.G. has a right to refuse medical treatment." (133 Ill. 2d at 106.) The majority recognizes that the issue in "[t]his case is one of first impression with this court." (133 Ill. 2d at 112.) In fact, this case is almost one of first impression in this *country*. Neither the

majority opinion nor the parties to this appeal cite any case which has addressed the issue of a minor's right to refuse treatment. The only case that I am aware of that has addressed a comparable issue is *In re D.P.* (Santa Clara County (Cal.) Juv. Ct. July 3, 1986), No. 91950, a California juvenile court proceeding that is cited in the *amicus curiae* brief filed in this case by the Watchtower Bible and Tract Society of New York, Inc. In light of the paucity of cases in which the issue before this court has been raised, I believe that there is no basis for concluding that it is likely that the issue will recur in the near future.

The two cases cited by the majority in support of its decision to address the merits of this appeal, *In re Estate of Brooks* (1965), 32 Ill. 2d 361, and *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, are distinguishable from this case. The issue in *Brooks* was whether a court could order an incompetent adult to receive blood transfusions where the adult, when competent, had repeatedly informed her doctor that her religious beliefs precluded her from receiving blood transfusions. (*Brooks*, 32 Ill. 2d at 365.) It was argued in *Brooks* that the case was moot because the court-ordered transfusions had already occurred. (*Brooks*, 32 Ill. 2d at 364.) This court, however, found the public interest exception to the mootness doctrine applicable to that case and so addressed the merits of the issue. (*Brooks*, 32 Ill. 2d at 365.) This court similarly found the public interest exception applicable in *Labrenz* where the issue before the court was whether a trial court order that an eight-day-old infant undergo a blood transfusion violated the constitutional rights of the infant's parents where the parents had objected to the transfusions on religious grounds. *Labrenz*, 411 Ill. at 625.

*Brooks* and *Labrenz* are distinguishable because the circumstances which gave rise to the actions in those

cases were likely to recur. In *Brooks*, it was likely that, in the future, the incompetent adult would be in need of further blood transfusions. Similarly, it was quite possible that the eight-day-old infant in *Labrenz* would be in need of a blood transfusion at some time in the future while she was still a minor and that her parents would object to any such transfusion. In both instances, the identical issues that were raised in *Brooks* and *Labrenz* would be raised again as to the same parties. In the instant case, however, E.G. has already turned 18 and therefore is no longer a minor. As a result, even if E.G. needs a blood transfusion in the future, the question of whether a mature minor has the right to refuse medical treatment will not be raised. I therefore do not believe that the public interest exception should be applied in this case.

A second exception which E.G. claims is applicable arises when a party to a proceeding will continue to suffer collateral consequences, such as limitations on the party's personal life or employment opportunities, if an allegedly erroneous ruling is allowed to stand. The problem with E.G.'s argument, however, is that while it may be true that there is a collateral-consequences exception to the mootness doctrine, such a doctrine clearly does not apply here. The doctrine does not apply here because, according to E.G., the only party who will suffer collateral consequences, if the trial court's ruling is allowed to stand, is E.G.'s mother. Although E.G.'s mother was a party to the proceedings in the trial court, she is not a party to this appeal. The cases cited by E.G. in support of her argument, however, all involve situations wherein a party to the *appeal* would suffer collateral consequences if the appeal were dismissed as moot. (See *In re Christenberry* (1979), 69 Ill. App. 3d 565; *Phillips v. Phillips* (1978), 62 Ill. App. 3d 408; *In re Sciara* (1974), 21 Ill. App. 3d 889.) The collateral-conse-

quences exception to the mootness doctrine is therefore inapplicable here.

The final exception to the mootness doctrine which E.G. claims applies in this case is the exception permitting review of moot cases when the cases involve events of short duration which are capable of repetition yet, due to the events' short durations, will continually evade review. For this exception to apply, however, the party claiming the exception must show "a reasonable expectation that the same complaining party would be subjected to the same action again." (*In re a Minor* (1989), 127 Ill. 2d 247, 258.) As explained earlier, E.G. is no longer a minor and so E.G. will not be subjected to an order in the future requiring her to undergo blood transfusions against her will. Accordingly, this third exception to the mootness doctrine is not applicable here.

Because I do not believe that any of the exceptions to the mootness doctrine are applicable here, I would dismiss this appeal as moot without addressing the merits of the parties' claims. I therefore respectfully dissent.