(No. 55451.—

MADISON PARK BANK, Appellee, v. JAMES B. ZAGEL, Director of Revenue, *et al.*, Appellants.

*Opinion filed June 1, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield (John D. WhiteNack, Special Assistant Attorney General, and Lloyd B. Foster, of Chicago, of counsel), for appellants.

Douglas H. Walter and Colleen A. Khoury, of Bell, Boyd & Lloyd, of Chicago (Sidney D. Davidson, of Peoria, of counsel), for appellee.

James B. Deutsch, of Jefferson City, Missouri, for *amicus curiae* State of Missouri.

New Mexico Taxation & Revenue Department of Santa Fe, New Mexico, for *amicus curiae* State of New Mexico.

Robert Abrams, Attorney General, of Albany, New York (Shirley Adelson Siegel, Solicitor General, and Wayne L. Benjamin, Assistant Attorney General, of counsel), for *amicus curiae* State of New York.

William D. Dexter, of Tumwater, Washington, for *amicus curiae* Multistate Tax Commission.

Donald X. Murray, of Chicago, for *amicus curiae* Illinois Bankers Association.

JUSTICE SIMON delivered the opinion of the court:

The substantive issue in this case is whether a corporation with losses for Federal income tax purposes, but positive income from sources subject to the State but not the Federal tax, may offset those losses on its Illinois income tax return against the positive State income. For the reason explained below, we do not decide that issue.

Section 201(a) of the Illinois Income Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 2—201(a)) imposes a tax on "net income." "Net income" is defined in section 202(a) (Ill. Rev. Stat. 1973, ch. 120, par. 2—202(a)) as "that portion of [taxpayer's] base income for [the] year which is allocable to this State [rather than to other states]," minus a standard exemption which is defined in section 204 (Ill. Rev. Stat. 1973, ch. 120, par. 2—204). "Base income," in turn, is de-

fined for corporations by section 203(b) (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)) as the taxpayer's "taxable income for the taxable year" *plus* several items, including "interest *** to the extent excluded from *** the computation of taxable income" (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(2)(A)), *minus* several other items including "[a]n amount equal to all amounts included in [taxable income] *** which are exempt from taxation by this State either by reason of its Constitution or by reason of the Constitution, treaties or statutes of the United States" (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(b)(2)(F)). *"Taxable income"* is defined by the Illinois Income Tax Act as "the amount of *** taxable income properly reportable for federal income tax purposes for the taxable year under the provisions of the Internal Revenue Code." (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(d)(1).) Thus for purposes of the Illinois income tax, "taxable income" does not mean income taxable by the State at all, but rather income taxable under the Federal income tax. It is in terms of this concept that "net income," the income on which Illinois levies its tax, is in part defined.

Specifically, the issue in this case is whether the taxpayer, Madison Park Bank, which in 1974 had a large overall loss in terms of Federal taxable income but an even larger gain from municipal bonds, taxable only under the Illinois income tax, can enter a negative number as its "taxable income" or whether the figure it must enter is "zero." The taxpayer argues that a net loss for Federal income tax purposes should be entered as such for State income tax purposes in the year it is incurred. The Department of Revenue argues that the proper way to recognize such losses for State income tax purposes is to carry the loss back or forward on one's Federal income tax return to another year, as contemplated by the Internal Revenue Code (26 U.S.C. sec. 172 (1976)), and then amend one's

State income tax return for that other year to reflect the smaller "taxable income" amount on the Federal return. The Department of Revenue also argued successfully in the appellate court that the taxpayer in this case had already done this and that the loss was therefore being used twice to reduce the taxpayer's debt in violation of section 203(f) of the Illinois Income Tax Act, which prohibits double deductions of the same loss (Ill. Rev. Stat. 1973, ch. 120, par. 2—203(f)).

The hearing officer in the administrative proceeding ruled for the Department of Revenue and ordered the bank to list its 1974 Federal taxable income as "zero." On administrative review, the circuit court of Peoria County summarily reversed the hearing officer, and the Department of Revenue appealed. The appellate court held that the Illinois tax laws did not permit the same item of loss to be deducted twice, but remanded the cause to the hearing officer with instructions to permit the bank to amend its 1974 return so as to allow recognition of the loss to the extent it had not already been carried back. (97 Ill. App. 3d 743.) We granted the Department's petition for leave to appeal.

The bank calls our attention to the fact that having previously carried back its entire 1974 loss to an earlier year, it has no current negative income to quarrel over in view of the appellate court's ruling that the same deduction cannot be taken twice. The bank did not challenge that ruling and paid the entire amount in controversy ($6,268) without dispute shortly after the appellate court decision; it therefore urges that we dismiss this case as moot. We recognize that the issue urged upon us by the Department of Revenue for review is a disputed question which will determine the rights of the bank if in future tax years it sustains a Federal loss it cannot carry back to offset earlier years' gains. However, we fail to find any *present* controversy between

the litigants here. The Department of Revenue would have no greater present rights against the bank were it to receive the ruling it requests than if we were to dismiss without opinion and allow the appellate court ruling to stand. The bank has paid all the money it was ever alleged to have owed. Any judgment we could render would be " 'wholly ineffectual for want of a subject matter on which it could operate' " (*La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375, 382, quoting *Brownlow v. Schwartz* (1923), 261 U.S. 216, 217, 67 L. Ed. 620, 621, 43 S. Ct. 263, 264) and could have advisory effect only.

This court will not review cases merely to establish a precedent or guide future litigation. (*In re Marriage of Wright* (1982), 89 Ill. 2d 498; *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375.) We therefore hold this cause to be moot.

It is true that Illinois courts have occasionally found exceptions to the mootness doctrine. (*People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618 (review granted on issue of whether parents can prevent an infant from receiving a needed blood transfusion even though he had already received it because failure to act quickly in similar cases in the future would lead to irreversible harm); *Environmental Protection Agency v. Pollution Control Board* (1980), 88 Ill. App. 3d 71 (review of administrative decision to allow a steel mill to discharge noxious fumes granted in order to address an important question affecting public health, even though licensing rules had been changed); *August H. Skoglund Co. v. Department of Transportation* (1978), 67 Ill. App. 3d 276 (review granted to allow defendant to vindicate its interest in a controversy which was likely to recur but unlikely to last long enough to allow appellate review to take place).) Whether or not the holdings in those cases were correct, this case involves nothing that would

justify review and enable this court to avoid characterizing it as moot. The public interest in review is less urgent than it is in a case which calls into question the entire process by which licenses to discharge noxious fumes are granted or denied. This is not a case in which quick action by the administrative body is needed, nor one which falls into the "capable of repetition, yet evading review" category. (*Sosna v. Iowa* (1975), 419 U.S. 393, 399-400, 42 L. Ed. 2d 532, 540, 95 S. Ct. 553, 557.) There is no reason to fear that all similar cases would become moot before they make it to this court's docket; in fact, the only reason this case is moot is because this taxpayer happened to have already used its entire Federal loss as a carryback so that it no longer existed to be offset against current State income.

The fact that this case became moot before we granted leave to appeal should not deter us from dismissing the case now. The United States Supreme Court in *Brownlow v. Schwartz* (1923), 261 U.S. 216, 67 L. Ed. 620, 43 S. Ct. 263, dismissed a writ of error under similar circumstances, finding that the policies behind the mootness doctrine were equally compelling whether the event that rendered the case moot occurred before or after the writ of error was granted.

We therefore dismiss this case. However, this disposition would leave standing the determination of the appellate court that taxpayers may offset Federal losses against current Illinois gains were we to do nothing more. We thus vacate the judgments of the appellate and circuit courts on this issue without comment as to the merits. See *People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237; *La Salle National Bank v. City of Chicago* (1954), 3 Ill. 2d 375.

*Judgments vacated;*
*cause dismissed.*