DUNCAN PUBLISHING, INC., *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (5th Division)   No. 1—97—3271

Opinion filed March 31, 1999.—Rehearing denied May 13, 1999.

GREIMAN, J., specially concurring in part and dissenting in part.

Gene L. Armstrong & Associates, P.C., of Oak Park (Gene L. Armstrong and John A. Duncan, of counsel), for appellants.

Brian Crowe, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Joshua Davidson, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs Duncan Publishing and Jon A. Duncan (sometimes collectively Duncan) filed a three-count complaint against defendant City of Chicago (City), essentially seeking to enjoin the City from withholding certain public records from them for inspection and copying

purposes, to compel the City to create an index of certain records to be more available to them, and to sanction the City for violating the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 1996)). Duncan also sought attorney fees and costs pursuant to the FOIA. The City filed its answer and affirmative defenses. Thereafter, both parties filed motions for summary judgment. The circuit court found that the City substantially complied with the FOIA; had produced the requested records; and denied Duncan's requests for injunctive relief, attorney fees and costs. The court granted summary judgment for the City and denied that of Duncan. Duncan appeals.

Duncan publishes a newsletter entitled "FOIA Watch." On January 11, 1996, Jon Duncan, in his capacity as Duncan's "registered agent," requested the City to provide him with "public records" pursuant to the FOIA, specifically to "inspect and copy a reasonably current list of all types or categories of records under the control of the City of Chicago, reasonably detailed in order to aid persons in obtaining access to public records," informing the City that section 5 of the FOIA (5 ILCS 140/5 (West 1996)) "requires the City to maintain such a list." Duncan also requested that the City provide "a *description of the manner* in which public records stored by means of electronic data processing may be obtained in a form comprehensible to persons lacking knowledge of computer language or printout format." (Emphasis in original.) Duncan further reminded the City that section "3(c) of the [FOIA (5 ILCS 140/3(c) (West 1996))] requires that your office must respond to this request within seven working days after receipt of this request."

In a second letter, also dated January 11, 1996, Duncan further requested that the City provide "any and all requests for information [or] documents under the [FOIA], which have been *received and denied* by the City of Chicago on or after July 1, 1984, but excluding all requests for inspection of documents maintained by the Department of Buildings and the Chicago Police Department" and "any and all notices of denial made or given by the City of Chicago to any such requests for documents." (Emphasis in original.) Duncan also requested "any and all indexes of denials of request for information under the [FOIA], according to the type of exemption asserted and, to the extent feasible, according to the types of records requested."

Receiving no response to either letter from the City, Duncan, on January 29, 1996, appealed to Mayor Richard M. Daley, pursuant to FOIA section 10(a). 5 ILCS 140/10(a) (West 1996). Mayor Daley did not respond to the appeal letter within seven days after receipt of the notice of appeal; accordingly, Duncan's administrative remedies were exhausted under FOIA section 10(b). 5 ILCS 140/10(b) (West 1996).

On February 13, 1996, Martin Stack, the City's FOIA officer, telephoned Duncan, advising that the requested documents were being compiled and should be available that week; Duncan agreed to the extension of time requested by Stack. The records were not produced that week, however.

As previously noted, on March 8, 1996, Duncan filed its three-count complaint seeking injunctive relief. Duncan alleges, in count I, that the City failed to respond to the request for the public records delineated in its first January 11 letter. Count II alleged that the City failed to respond to Duncan's request for the public records as set forth in its second January 11 letter. In both counts I and II, Duncan sought to enjoin the City from withholding the requested public records, to compel the City to make the records available for public inspection, to compel the City to provide an index to those records, and to enjoin permanently the City "from failing to inform persons who are denied appeals from requests for public records of their right to judicial review of such denials."

Alleging further that the City violated the FOIA in failing to "maintain [an] index of copies of notices of denial in a single central office file according to the type of exemption asserted, in violation of 5 ILCS 140/9(b) [(West 1996)]," Duncan next sought, in count III, a "mandatory injunction requiring the [City] to permanently maintain a copy of all notices of denial of [FOIA] requests in a single central office file that is open to the public and indexed according to the type of exemption asserted and, to the extent feasible, according to the types of records requested."

In all three counts, Duncan requested reasonable attorney fees and costs.

On April 26, 1996, several weeks after suit was filed, the City informed Duncan that the records requested had been assembled and would be made available for inspection and copying on May 10, 1996. On that day, Duncan and its lawyer reviewed two boxes of documents and requested that some of those documents be copied. On May 28, 1996, the City notified Duncan by letter of the cost of the copying. Thereafter, on October 28, 1996, the City acknowledged that certain requested documents had yet to be produced and notified Duncan that "[t]hese will be provided as soon as they are available." On January 13, 1997, the City sent to Duncan's attorney "the remaining lists of departmental records which [were] requested." Thereafter, on January 29, 1997, Duncan, through its attorney, notified the City that its production of records was incomplete. On May 22, 1997, the City provided a description of the manner in which public records stored by means of electronic data processing may be obtained in a form

comprehensible to those lacking computer knowledge. With this letter, the City completed Duncan's requests for documents.

While written and telephone correspondences were taking place, Duncan and the City each filed motions for summary judgment. On August 5, 1997, finding that "[t]his was an incredible production that was being requested" and that the City did its best, the circuit court denied Duncan's request for costs and attorney fees and granted the City's motion for summary judgment on all counts.

## I

Duncan claims that the circuit court erred in granting summary judgment to the City on counts I and II of the complaint contending that, although the requested documents were produced, the complaint was not moot because the issue of attorney fees and costs remained unresolved. Alternatively, Duncan asserts that, even if moot, this case falls under the public interest exception to the mootness doctrine.

■ A claim is moot when no actual controversy exists or events occur which make it impossible for a court to grant effectual relief. *Dixon v. Chicago & North Western Transportation Co.*, 151 Ill. 2d 108, 116, 601 N.E.2d 704 (1992); *La Salle National Bank v. City of Chicago*, 3 Ill. 2d 375, 378-79, 121 N.E.2d 486 (1954). Actions will be dismissed as moot once plaintiffs have secured what was originally sought. *Katherine M. v. Ryder*, 254 Ill. App. 3d 479, 486, 627 N.E.2d 42 (1993).

In the instant case, counts I and II of Duncan's complaint sought, pursuant to the FOIA, the production of an array of documents within various City departments' control. All the documents eventually were tendered to Duncan, albeit after a lengthy delay. The controversy over the City's production of documents clearly ceased to exist once the City tendered those documents to Duncan. It is undisputed that the requested records were produced and that all the records and information requested have been received by Duncan.

■ Because the complaint sought payment of costs and attorney fees from the City, however, Duncan insists that the case is not moot. Once an agency produces all the records related to a plaintiff's request, the merits of a plaintiff's claim for relief, in the form of production of information, become moot. *GMRI, Inc. v. Equal Employment Opportunity Comm'n*, 149 F.3d 449, 451 (6th Cir. 1998); *Anderson v. United States Department of Health & Human Services*, 3 F.3d 1383, 1384 (10th Cir. 1993). Although a plaintiff's claim for production of records and information is moot, its motion for attorney fees, which is " 'ancillary to the underlying action,' " is not. *GMRI*, 149 F.3d at 451, quoting *Carter v. Veterans Administration*, 780 F.2d 1479, 1481 (9th Cir. 1986). Therefore, Duncan's request for an award of attorney fees

contained in the complaint does not rescue the moot claims for injunctive relief, but is ancillary to those claims.

■ Alternatively, Duncan urges that the public nature of this question is obvious, requiring review of the claim. This case does not fall under the "substantial public interest exception" to the doctrine, however. The criteria for application of the public interest exception are (1) the existence of a question of a public nature; (2) the desirability of an authoritative determination for the purpose of guiding public officers in the performance of their duties; and (3) the likelihood that the question will recur. *In re A Minor*, 127 Ill. 2d 247, 257, 537 N.E.2d 292 (1989). A clear showing of each factor is required to bring a case within this exception. *Mount Carmel High School v. Illinois High School Ass'n*, 279 Ill. App. 3d 122, 125-26, 664 N.E.2d 252 (1996). This exception is invoked only on rare occasions where there is an extraordinary degree of public concern and interest. *People ex rel. Partee v. Murphy*, 133 Ill. 2d 402, 410, 550 N.E.2d 998 (1990). Although there is little question that the production of government records to an individual and, in this case, a publisher of an informational newsletter, is a matter of public concern, there is little likelihood that this issue will recur.

■ In support of its recurrence argument, Duncan states that "the City's lengthy delays in responding to similar FOIA requests will inevitably recur" because "the City refuses to maintain a single central public file." Further, Duncan maintains that "[a]bsent a court order, there is nothing to prevent the City from ignoring subsequent FOIA requests if they so chose." There is nothing in the record to suggest that the City "ignored" Duncan's requests, however. In fact, the City responded to Duncan's letters, both in writing and by telephone on various occasions. Moreover, although Duncan maintains the City's public officials "need to understand their obligations [*sic*] of prompt responses to FOIA requests," it is not within this court's purview to instruct those officials where the statute already so clearly advises them.

Essentially, Duncan anticipates future wrongs and contemplated violations. No present effect on the controversy could be achieved by addressing envisaged violations in this decision, which would operate instead as an advisory opinion. See *Madison Park Bank v. Zagel*, 91 Ill. 2d 231, 235, 437 N.E.2d 638 (1982). Illinois courts are foreclosed from issuing advisory opinions and cannot indulge in rendering opinions simply for the sake of creating precedents to govern future cases. *Mount Carmel High School*, 279 Ill. App. 3d at 126, citing *People v. Halasz*, 244 Ill. App. 3d 284, 285-86, 614 N.E.2d 311 (1993). Accordingly, the circuit court's dismissal of counts I and II as moot was proper.

## II

■ Duncan next contends that the circuit court erred in granting summary judgment to the City on count III of the complaint. Duncan maintains entitlement to the recovery sought in count III because the City fails to maintain a "single central office file" containing copies of notices of request denials, in violation of section 9 of the FOIA (5 ILCS 140/9 (West 1996)).

Section 9(b) of the FOIA provides:

"When a request for public records is denied on the grounds that the records are exempt under Section 7 of this Act, the notice of denial shall specify the exemption claimed to authorize the denial. Copies of all notices of denial shall be retained by each public body in a single central office file that is open to the public and indexed according to the type of exemption asserted and, to the extent feasible, according to the types of records requested." 5 ILCS 140/ 9(b) (West 1996).

Section 2(a) defines "public body" as

"any *legislative, executive, administrative,* or advisory *bodies of* the State, state universities and colleges, counties, townships, *cities,* villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, *and any subsidiary bodies of any of the foregoing* including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue." (Emphasis added.) 5 ILCS 140/2(a) (West 1996).

In the instant case, Duncan alleged in count III, and the City admitted, that the City failed to maintain a single central office file from all departments for the notices of denial. Duncan therefore requested that the circuit court "enter an order of mandatory injunction requiring the [City] to permanently maintain a copy of all notices of denial of [FOIA] requests in a single central office file." The City contends that it complies with section 9(b) by maintaining a central office file for *each* department, containing denial notices issued by those departments. Duncan asserts that the City's practice does not comport with the specific language of the FOIA.

The FOIA mandates in section 9(b) that *each* public body maintain a single central office file containing notices of denials. 5 ILCS 140/ 9(b) (West 1996). The FOIA defines "public body" as "any legislative, executive, administrative, or advisory bodies of the State, *** cities *** and any subsidiary bodies of the foregoing." 5 ILCS 140/2(a) (West 1996). Clearly, each of the individual departments is a subsidiary body of the City and is a "public body" as defined by the FOIA. See *Board of Regents of the Regency University System v. Reynard,* 292 Ill. App. 3d 968, 978, 686 N.E.2d 1222 (1997) (under the FOIA, a subsidiary

public body is itself a public body for purposes of complying with the requirements of the statute). The City is, therefore, in compliance with the FOIA when each of its departments maintains a single central office file containing the denials.

Duncan nevertheless maintains that the purpose of the FOIA, namely, to facilitate the public's review of government records, is frustrated when the City does not maintain its own central office file containing all the individual departments' denials. Whether the system employed by the City is unwieldy in responding to certain requests, however, is irrelevant where the plain language of the statute is clear. See *Beecher Medical Center, Inc. v. Turnock*, 207 Ill. App. 3d 751, 754, 566 N.E.2d 445 (1990) (fundamental rule of statutory construction is, when an act defines its own terms, those terms must be construed according to the definitions given to them in the act). By maintaining office files in each department containing copies of denials, the City complies with the statute. Accordingly, the circuit court properly granted summary judgment to the City as to count III of Duncan's complaint.

Although the dissent takes issue with our "interpretation" of the term "public body," we will not depart from the definition supplied by the legislature itself. Unquestionably, each of the various departments within the City must be considered public bodies. Not only is the plain language of the statute clear, the several cases interpreting both the FOIA and the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 1996)), which contains virtually the identical definition of "public body," support the position that the individual departments, which are City funded and City controlled, are "public bodies" and are each individually subject to the mandates of the FOIA. See, *e.g.*, *People ex rel. Difanis v. Barr*, 83 Ill. 2d 191, 414 N.E.2d 731 (1980); *Copley Press, Inc. v. Administrative Office of the Courts*, 271 Ill. App. 3d 548, 648 N.E.2d 324 (1995); *Hopf v. Topcorp, Inc.*, 256 Ill. App. 3d 887, 628 N.E.2d 311 (1993); *Rockford Newspapers, Inc. v. Northern Illinois Council on Alcoholism & Drug Dependence*, 64 Ill. App. 3d 94, 380 N.E.2d 1192 (1978); *DeHarder Investment Corp. v. Indiana Housing Finance Authority*, 909 F. Supp. 606 (S.D. Ind. 1995).

Notwithstanding the clear definition of "public body" provided by the legislature, the dissent insists that section 9(b) must be given "preference" over the "general statutory prescription" of section 2(a). In section 2(a), however, the legislature has provided the definitions which apply to the *entire* FOIA, not just those sections to which we find the application appropriate. The principle of statutory construction advanced by the dissent is inapplicable where, as here, the definitions provided by the legislature do not conflict, nor contradict, the prescriptions in other sections of the FOIA.

## III

Duncan lastly asserts that the circuit court abused its discretion in refusing to award attorney fees and costs under section 11(i) of the FOIA, for expenses incurred in pursuing the requests for records and in filing suit to obtain those records.

■ Section 11(i) specifies in this regard:

"If a person seeking the right to inspect or receive a copy of a public record substantially prevails in a proceeding under this Section, the court may award such person reasonable attorneys' fees if the court finds that the record or records in question were of clearly significant interest to the general public and that the public body lacked any reasonable basis in law for withholding the record." 5 ILCS 140/11(i) (West 1996).

The fee provision was intended neither as a reward for successful plaintiffs nor as a punishment against the government. *Hamer v. Lentz*, 132 Ill. 2d 49, 62, 547 N.E.2d 191 (1989). Its purpose, largely, is to prevent the sometimes insurmountable barriers presented by attorney fees from hindering an individual's request for information and from enabling the government to escape compliance with the law. *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363-64 (D.C. Cir. 1977).

Section 11(i) of the FOIA indicates that the circuit court "may" award attorney fees only if certain criteria are met: first, a plaintiff is *eligible* for a fee award when he has "substantially prevailed"; second, after examining all the circumstances, the court determines whether a plaintiff is *entitled* to an award. 5 ILCS 140/11(i) (West 1996). Once eligibility is shown, a plaintiff must prove entitlement to fees by demonstrating, in relevant part, that the record or records in question clearly were of significant interest to the general public and that the public body lacked any reasonable basis in law for withholding the record. *People ex rel. Ulrich v. Stukel*, 294 Ill. App. 3d 193, 202, 689 N.E.2d 319 (1997).

■ In the case *sub judice*, the threshold question is, therefore, whether plaintiffs have "substantially prevailed." A court order compelling disclosure is not necessarily a prerequisite to an award of fees, nor is a dismissal of a complaint due to compliance with the request a bar. *Kuffel v. United States Bureau of Prisons*, 882 F. Supp. 1116, 1127 (D.D.C. 1995); *Lovell v. Department of Justice*, 589 F. Supp. 150, 153 (D.D.C. 1984). Rather, the inquiry is whether the filing of suit was reasonably necessary to obtain the information and a causal nexus exists between the action and the agency's surrender of the information. *Lovell*, 589 F. Supp. at 153. A plaintiff will not be eligible for an award of fees if the production of records was independent of the lawsuit or if it was due to routine administrative processing. *Kuffel*, 882 F. Supp.

at 1127. In short, eligibility is primarily a question of causation, which may be answered by the agency's conduct in processing the request. *Lovell*, 589 F. Supp. at 154.

Should a plaintiff be deemed "eligible" by having "substantially prevailed," his entitlement to an award of fees next must be established. Where requested records were of "clearly significant interest to the general public" and "the public body lacked any reasonable basis in law for withholding the record," attorney fees are warranted.

■ In the present case, it is clear that the City did not comply with the FOIA; it failed, for whatever reason, to tender the documents in a timely manner. Whether the City's delay in tendering the documents was due to routine administrative inertia or unavoidable and unforeseen circumstances is not apparent from the record. Likewise, whether Duncan's suit was necessary to force the City's compliance with the FOIA cannot be determined from the record before us. Because the FOIA allows for the recovery of attorney fees, the circuit court should have provided Duncan the opportunity to be heard regarding its claim for fees, and the court erroneously denied it that right.[1]

Accordingly, we affirm the grant of summary judgment to the City on counts I, II and III of Duncan's complaint and we reverse that portion of the court's order denying Duncan's request for attorney fees and remand the cause for a hearing on that issue.

Affirmed in part, reversed in part and cause remanded with directions.

THEIS, J., concurs.

JUSTICE GREIMAN, specially concurring in part and dissenting in part:

I concur with the majority in affirming the entry of summary judgment with respect to counts I and II by reason of the mootness of the issues raised and in its refusal to consider the matter under the public interest exception to the mootness doctrine. Similarly, I concur with the majority in its decision to return this matter to the trial court to consider the appropriateness of attorney fees for the plaintiff. I dissent, however, from the majority's conclusion that the City is

---

[1]Duncan is not entitled to "costs," because the FOIA allows only for the recovery of "attorneys' fees" and is silent on availability of an award of costs. See *Galowich v. Beech Aircraft Corp.*, 92 Ill. 2d 157, 162, 441 N.E.2d 318 (1982).

complying with section 9(b) of the FOIA (5 ILCS 140/9(b) (West 1996)) in its maintenance of a "central" file for FOIA denials.

The City admits that it does not maintain a "single central office file that is open to the public and indexed according to the type of exemption asserted" and that it took a significant passage of time before plaintiff received a response to his requests.

The majority cites section 9(b), relating to the maintenance of a "single central office," but asserts that this requirement is modified by the provision of section 2(a) of the Act, which defines a "public body" as

> "any legislative, executive, administrative, or advisory bodies of the State, state universities and colleges, counties, townships, cities, villages, incorporated towns, school districts and all other municipal corporations, boards, bureaus, committees, or commissions of this State, and any subsidiary bodies of any of the foregoing including but not limited to committees and subcommittees which are supported in whole or in part by tax revenue, or which expend tax revenue." 5 ILCS 140/2(a) (West 1996).

The majority takes care to emphasize the statement that defines a "public body" as "cities *** and any subsidiary bodies of any of the foregoing" (5 ILCS 140/2(a) (West 1996)). 304 Ill. App. 3d at 784. The majority then provides the usual and customary command that in any statutory construction we look to the plain language employed by the legislature in crafting the statute. Apparently, we need not look to the plain language of section 9(b), which commands that there be a "single central office file" maintained by public bodies (5 ILCS 140/9(b) (West 1996)). Further, the majority ignores the rule of statutory construction that requires us to give preference to a specific statutory limitation or duty over a general statutory prescription. *E.g., People v. Villarreal*, 152 Ill. 2d 368, 379 (1992) ("[i]t is a fundamental rule of statutory construction that where there exists a general statutory provision and a specific statutory provision, either in the same or another act, which both relate to the same subject, the specific provision controls and should be applied"); see also *McDunn v. Williams*, 156 Ill. 2d 288, 309 (1993); *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195-96 (1992).

The majority suggests that each individual department is a subsidiary body of the City and, accordingly, is a public body within the meaning of the Act and, therefore, may maintain section 9(b) records. It cites *Board of Regents of the Regency University System v. Reynard*, 292 Ill. App. 3d 968 (1997), for this proposition (304 Ill. App. 3d at 784), even though both the facts and holding in *Regents* fall far short of the mark. The issue there was whether the Open Meetings Act (5

ILCS 120/1 *et seq.* (West 1994)) and the FOIA applied to an advisory council created by the Academic Senate of Illinois State University, which was one of five universities governed by the Board of Regents of the Regency University System. The court held that such an entity was a public body and required application of both of these "sunshine laws." The court did not address the issue of the maintenance of a "single central office file" for denials of FOIA requests.

The majority misreads my dissent. 304 Ill. App. 3d at 785. I do not take issue with its interpretation of the term "public body" and believe that the various subdivisions of the City can indeed be "public bodies" within the meaning of section 2 of the Act. The several cases cited by the majority merely define a "public body" but do not touch upon a definition of "single central office file." None of the cited cases touch upon the interaction between section 9(b) and section 2 of the Act. Furthermore, none of the cases cited consider the meaning or effect of the word "central."[2]

"A statute capable of two interpretations should be given that which is reasonable and which will not produce absurd, unjust, unreasonable or inconvenient results that the legislature could not have intended." *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund*, 155 Ill. 2d 103, 110 (1993). Moreover, the doctrine of *in pari materia* "provides that, where two statutory provisions address the same subject matter, an interpretation which gives effect to both provisions must be adopted." *Johnson v. St. Therese Medical Center*, 296 Ill. App. 3d 341, 348 (1998).

Under the majority's view, the "Senior Citizens Sewer Service Charge Exemptions," a subsidiary body of the Department of Sewers,

---

[2]In *People ex rel. Difanis v. Barr*, 83 Ill. 2d 191 (1980), the court found that a gathering of several aldermen could be subject to the Open Meetings Act. In *Copley Press, Inc. v. Administrative Office of the Courts*, 271 Ill. App. 3d 548 (1995), the court found that agencies which perform judicial functions are not subject to the disclosure requirements of the FOIA. In *Hopf v. Topcorp, Inc.*, 256 Ill. App. 3d 887 (1993), the court found that corporations are not public bodies subject to the FOIA where the corporations do not constitute legislative, executive, administrative, or advisory bodies of the government. In *Rockford Newspapers, Inc. v. Northern Illinois Council on Alcoholism & Drug Dependence*, 64 Ill. App. 3d 94 (1978), the court found that a private corporation that received governmental funding was not a "subsidiary body" within the meaning of the Open Meetings Act. In *DeHarder Investment Corp. v. Indiana Housing Finance Authority*, 909 F. Supp. 606 (S.D. Ind. 1995), the federal district court found that Indiana Housing Finance Authority was not a federal "agency" as the term is used in the federal FOIA (5 U.S.C. § 552(f) (1994)) and, thus, was not subject to the federal FOIA.

which is a subsidiary body of the City of Chicago, is a subsidiary public body able to maintain its own central file of denials of FOIA requests.

Plaintiff notes that there are 25 distinct agencies or departments that the City acknowledges maintain a "single central office file." Many of these agencies or departments have agencies within their jurisdiction which, under the majority's definition, could be subsidiaries capable of maintaining their individual "single central office file." Additionally, there are at least 18 other departments or agencies of the City that are worthy of maintaining a "single central office file" with reference to FOIA denials.[3]

In setting forth the foundations of statutory construction, the ma-

_____

[3]According to documents produced by the City in the trial court, there are 25 City Departments that maintain various types of FOIA denials. These include (1) the Department on Aging; (2) the Department of Animal Care and Control; (3) the Department of Buildings; (4) the Office of Cable Communications; (5) the Department of Consumer Services; (6) the Department of Environment; (7) the Board of Ethics; (8) the Department of Finance; (9) the Chicago Fire Department; (10) the Department of Fleet Management; (11) the Department on Housing; (12) the Commission on Human Relations; (13) the Department of Human Services; (14) the Office of the Inspector General; (15) the Department of Law; (16) the Department of Public Health; (17) the Mayor's Office of Special Events; (18) the Municipal Reference Library; (19) the Department of Personnel; (20) the Department of Planning and Development; (21) the Department of Streets and Sanitation; (22) the Department of Sewers; (23) the Department of Transportation; (24) the Department of Water; and (25) the Department of Zoning. Additionally, within the 25 enumerated agencies, there are at least 82 subdivisions.

There are at least 18 other City departments with offices and published telephone listings, which the City did not include on its list and which, under the majority's view, could maintain FOIA denials. These include (1) the Chicago Department of Aviation; (2) the Chicago Office of Management and Budget; (3) the Chicago city clerk; (4) the Chicago city treasurer; (5) the Department of Cultural Affairs; (6) the Mayor's Office for People with Disabilities; (7) the Economic Development Commission; (8) the Chicago Board of Election Commissioners; (9) the Mayor's Office of Employment and Training; (10) the Department of General Services; (11) the Chicago Housing Authority; (12) the Mayor's Office of Inquiry and Information; (13) the License Appeal Commission; (14) the Office of the Mayor; (15) the Chicago Police Department; (16) the Department of Purchase, Contracts and Supplies; (17) the Department of Revenue; and (18) the Board of Zoning Appeals. See Ameritech, City/County/State/United States Government Guide, *Chicago White Pages*, at 12-14 (February 1998).

jority failed to give effect to the notion that the legislature is presumed not to create legislation that has an absurd result. Moreover, the majority has failed to consider the guiding principles the Act set out in section 1:

> "Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 1996).

I cannot conceive that the framers of this critical piece of legislation, which seeks to open the processes of government to the public, would have imagined that a citizen seeking to determine the denial policy of an Illinois city might be required to file 50 or more FOIA requests.

Therefore, I would remand this matter to the trial court to allow the court to consider the issues raised in count III and thereafter fashion an injunctive remedy to comply with the goals and purpose of the Freedom of Information Act.