# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Roxana Community Unit School District No. 1 v. Environmental Protection Agency*,
2013 IL App (4th) 120825

| | |
|---|---|
| Appellate Court Caption | ROXANA COMMUNITY UNIT SCHOOL DISTRICT NO. 1, WOOD RIVER-HARTFORD SCHOOL DISTRICT NO. 15, EAST ALTON-WOOD RIVER COMMUNITY HIGH SCHOOL DISTRICT NO. 14, ROXANA COMMUNITY PARK DISTRICT, SOUTH ROXANA FIRE PROTECTION DISTRICT, and WOOD RIVER TOWNSHIP HOSPITAL DISTRICT, Plaintiffs-Appellants, v. THE ENVIRONMENTAL PROTECTION AGENCY, THE POLLUTION CONTROL BOARD, THE DEPARTMENT OF REVENUE, and WRB REFINING, LLC, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-12-0825 |
| Filed | November 14, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action seeking declaratory and injunctive relief filed by several taxing bodies based on allegations that the Illinois Environmental Protection Agency violated the Freedom of Information Act and that the Illinois Pollution Control Board violated the Open Meetings Act through their conduct in connection with tax exemptions sought by a refinery in connection with the construction of pollution control facilities, the trial court erred in granting summary judgment for defendants, since the Agency failed to comply with plaintiffs' request for documents under the Freedom of Information Act and the Board conducted closed meetings in violation of the Open Meetings Act. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 12-MR-224; the Hon. John Schmidt, Judge, presiding. |
| Judgment | Reversed; cause remanded. |
| Counsel on Appeal | Stuart L. Whitt and Joshua S. Whitt, both of Whitt Law LLC, of Aurora, and Donald M. Craven (argued), and Esther J. Seitz, both of Donald M. Craven, P.C., of Springfield, for appellants.<br><br>Thomas H. Wilson, of HeplerBroom, LLC, of Springfield, and Beth A. Bauer, of HeplerBroom, LLC, of Edwardsville, for appellee WRB Refining, LLC.<br><br>Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Richard S. Huszagh and John P. Schmidt, Assistant Attorneys General, of counsel), for other appellees. |
| Panel | PRESIDING JUSTICE STEIGMANN delivered the judgment of the court, with opinion.<br>Justices Appleton and Pope concurred in the judgment and opinion. |

## OPINION

¶ 1      In March 2012, plaintiffs, Roxana Community Unit School District No. 1 (Roxana), Wood River-Hartford School District No. 15, East Alton-Wood River Community High School District No. 14, Roxana Community Park District, South Roxana Fire Protection District, and Wood River Township Hospital District, filed a complaint for declaratory and injunctive relief against defendants, the Illinois Environmental Protection Agency (Agency), the Illinois Pollution Control Board (Board), the Illinois Department of Revenue (Department), and WRB Refining, LLC (WRB). The complaint alleged, in part, that (1) the Agency violated the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1 to 11.5 (West 2010)) (count I) and (2) the Board violated the Open Meetings Act (5 ILCS 120/1 to 7.5 (West 2010)) (count II).

¶ 2      In April 2012, the parties filed cross-motions for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). Following a

hearing on those motions conducted later that month, the trial court in August 2012 entered an order, granting summary judgment in defendants' favor.

¶ 3        Plaintiffs appeal, arguing that the trial court erred by granting summary judgment in (1) the Agency's favor as to count I and (2) the Board's favor as to count II. We agree and reverse.

¶ 4                                                    I. BACKGROUND

¶ 5        The following information was gleaned from the parties' pleadings, depositions, affidavits, and other supporting documents filed in the trial court.

¶ 6                                             A. Preliminary Information

¶ 7        WRB operates the Wood River Refinery in Madison County, Illinois, which is among the largest oil refineries in the United States. Plaintiffs are local government entities in Madison County that receive varying amounts of their respective fiscal operating budget requirements from WRB through property tax assessments. From 2006 through 2011, WRB made substantial renovations to its refinery.

¶ 8        Beginning in the fall of 2010, WRB submitted approximately 60 applications to the Agency, seeking certification of over $3 billion in infrastructure improvements as pollution control facilities. (The term "pollution control facilities" is defined by the Property Tax Code (35 ILCS 200/1-1 to 32-20 (West 2010)) as "any system, method, construction, device or appliance appurtenant thereto, or any portion of any building or equipment" that eliminates, prevents, or reduces pollution (35 ILCS 200/11-10 (West 2010)).)

¶ 9        The Agency was responsible for evaluating WRB's applications and making recommendations to the Board. If the Board thereafter accepted the Agency's recommendation to certify a WRB improvement as a pollution control facility, WRB would enjoy preferential tax treatment on that improvement. Specifically, the certified improvement would be assessed at 33 1/3% of the "fair cash value of [its] economic productivity" to WRB, instead of being assessed at 33 1/3% of the improvement's actual fair cash value. Compare 35 ILCS 200/11-5 (West 2010) (pertaining to valuation of pollution control facilities), with 35 ILCS 200/9-145 (West 2010) (pertaining to general valuation procedures). In addition, the certification would supplant the county as the tax assessor in favor of the Department (35 ILCS 200/11-20 (West 2010)). In its applications for pollution-control-facilities status, WRB claimed that the economic productivity of the identified improvements was of little or no value to WRB.

¶ 10                            B. The Facts Surrounding Plaintiffs' FOIA Claims

¶ 11        On November 7, 2011, plaintiffs submitted a FOIA request to the Agency, requesting copies of WRB's pending applications for pollution-control-facility certification. Although the Agency received plaintiffs' FOIA request the following day, the Agency admitted that it did not comply with section 3(d) of FOIA, which mandates that "each public body shall, promptly, either comply with or deny a request for public records within [five] business days

after its receipt *** unless the time for response is properly extended." 5 ILCS 140/3(d) (West 2010); see 5 ILCS 140/3(e) (West 2010) (outlining the circumstances under which a public body may extend the deadline for FOIA compliance an additional five business days). The Agency also admitted that it did not seek an extension of time to satisfy plaintiffs' FOIA request.

¶ 12 On November 22, 2011, plaintiffs inquired about the unanswered FOIA request. An Agency representative informed plaintiffs that the Agency could neither respond due to a large volume of such requests at that time nor provide a future estimate on when it would respond. The Agency acknowledged that the explanations offered to Roxana did not exempt it from FOIA compliance. On February 1, 2012, the Agency provided plaintiffs the information requested.

¶ 13 On March 2, 2012, plaintiffs submitted two additional FOIA requests for (1) correspondence between the Agency, the Board, and WRB regarding WRB's certification requests and (2) "certain permit applications submitted to the [Agency] from WRB ***, which permit applications referenced in the application for certification as [pollution control] facilities." During the week of April 2, 2012, the Agency complied with plaintiffs' March 2012 FOIA requests.

¶ 14 C. The Facts Surrounding Plaintiffs' Open Meetings Act Claims

¶ 15 On September 2, 2011, Roxana learned of two pending applications WRB submitted for pollution-control-facilities certification by viewing the Board's website. On September 8, 2011, Roxana filed separate petitions for leave to intervene, requesting that the Board hold hearings on those two applications. Specifically, Roxana alleged that (1) WRB's two requests failed to satisfy the certification requirements and (2) the Board's certifications would adversely affect Roxana by depriving it of additional tax revenues. That same day, the Board accepted the Agency's earlier recommendation and certified both of WRB's applications as pollution control facilities. On October 20, 2011, the Board denied Roxana's petitions for leave to intervene, concluding that they were moot because it had granted the certifications, which foreclosed any further consideration.

¶ 16 In November 2011, Roxana filed a motion to reconsider the Board's denial of its two petitions for leave to intervene. Later that same month, the Agency recommended that the Board approve an additional 26 certification requests that WRB had earlier submitted. In December 2011, Roxana filed 26 separate petitions to intervene, asserting the same arguments it posited in its previous two petitions.

¶ 17 On January 12, 2012, the Board held what it termed a "closed deliberative session" to consider Roxana's November 2011 motion to reconsider and its December 2011 petitions to intervene. On January 19, 2012, the Board conducted an open meeting at which it permitted neither Roxana nor any other interested member of the public to offer comments or concerns. The Board did not discuss the merits of Roxana's filings but instead denied Roxana's motion to reconsider in a 22-page written decision issued at the hearing. On January 26, 2012, the Board held another closed deliberative session to discuss Roxana's 26 remaining petitions to intervene. On February 2, 2012, the Board conducted an open meeting

in which it did not entertain public comment. At that meeting, the Board (1) voted to deny each of Roxana's petitions to intervene and (2) issued 26 separate 18-page decisions to that effect.

¶ 18                                    D. The Parties' Filings

¶ 19       In March 2012, plaintiffs filed a six-count complaint for declaratory and injunctive relief against defendants. Plaintiffs alleged, in part, that (1) the Agency violated FOIA by not providing requested public records as statutorily mandated (count I) and (2) the Board's certification of specific WRB infrastructure improvements as pollution control facilities violated the Open Meetings Act (count II). (Counts III through VI are not before us.)

¶ 20       Following a hearing held later that month, the trial court granted plaintiffs' motion for a preliminary injunction, enjoining the Board from considering any pollution-control-facilities issues involving plaintiffs and WRB until a final resolution of plaintiffs' complaint for declaratory and injunctive relief. WRB appealed, and this court affirmed the court's order but modified the scope of the injunction to enjoin the Board's consideration of any pollution-control-facilities applications until resolution of plaintiffs' complaint. See *Roxana Community Unit School District No. 1 v. WRB Refining, LP*, 2012 IL App (4th) 120331, ¶ 33, 973 N.E.2d 1073.

¶ 21       In April 2012, plaintiffs and defendants filed cross-motions for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2010)). Later that month, the trial court conducted a hearing on the parties' respective motions for summary judgment and, thereafter, took the matter under advisement.

¶ 22                      E. The Trial Court's Summary-Judgment Determination

¶ 23       On July 27, 2012, the trial court entered the following docket entry:

   "This matter was heard on Cross Motion for Summary Judgment. *** The *** Parties agree there are no material facts at issue ***. Plaintiffs['] Count I alleges a violation of [FOIA] and asks in relief an injunction prohibiting the [Agency] from processing any further Applications for Certification of a Pollution Control Facility relative to WRB *** until it has complied with [FOIA]. Count II(E) alleges the [Agency] violated the Illinois Open Meetings Act and asks this Court to declare null and [void] all actions taken[ ] at the meetings [on] January 19, 2012[,] and February 2, 2012[,] if the subject matter of those meetings was discussed *** at the Closed Deliberative Sessions of January 12, 2012[,] and January 26, 2012. The Court has review the pleadings ***, considered the case law *** and reviewed the exhibits tendered ***. Court GRANTS the Defendants['] Motion for Summary Judgment as to Count I(E) and II(E)."

(The court's reference to "Count I(E) and II(E)" concerns one of numerous prayers for relief plaintiffs requested under each count.)

¶ 24       Later that month, plaintiffs filed a "motion for clarification, reconsideration, and in the alternative, for a stay pending appeal." At the August 2012 hearing on that motion, plaintiffs' counsel inquired, as follows:

"Judge, we don't know how far the Court intended to go on Count [I]. Was there a finding of a violation of FOIA, was there a finding that there was a violation of FOIA but no remedy was necessary because [the Agency] began producing records, or as my reading of the docket entry goes[,] did the Court simply say I'm not going to grant you relief under paragraph E but I'm not dealing with the rest of the issues in Count [I?]

As to the open meetings claim in Count [II], the Court's docket entry makes at least two references to Paragraph E which is the paragraph asking that the action of the *** Board be declared void, and the Court clearly says, at least that part of the order, that *** it appears [the Court is] not going to grant that relief."

Plaintiffs' counsel concluded by requesting that the court "clarify the scope of the July 27th docket entry." Defendants' counsel agreed that the court's order was not clear.

¶ 25    In response, the trial court acknowledged the parties' comments regarding the lack of clarity of its July 2012 order. The court thereafter informed the parties that it would promptly make findings of fact and promulgate those findings in a docket entry. On August 13, 2012, the court entered the following order:

"Court makes the following findings: 1. The [Agency and Board complied] with [FOIA]. 2. The [Agency and Board] did not violate the Illinois Open Meetings Act. Assistant Attorney General is directed to prepare a written order consistent with the Court's findings."

¶ 26    On August 21, 2012, the trial court held a telephonic hearing on plaintiffs' objection to defendants' proposed order. Following that hearing, the court granted plaintiffs leave to file an objection to the proposed order, which plaintiffs filed that same day. The trial court thereafter entered a written order, denying plaintiffs' motion for summary judgment and granting defendants' motion for summary judgment.

¶ 27    This appeal followed.


¶ 28            II. THE TRIAL COURT'S GRANT OF SUMMARY JUDGMENT
¶ 29                A. Summary Judgment and the Standard of Review
¶ 30    "Summary judgment is proper when 'the pleadings, depositions, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 17, 990 N.E.2d 1144 (quoting 735 ILCS 5/2-1005(c) (West 2010)). "Where the parties file cross-motions for summary judgment, as they did in this case, they agree that only a question of law is involved, and they invite the court to decide the issues based on the record." *Martin v. Keeley & Sons, Inc.*, 2012 IL 113270, ¶ 25, 979 N.E.2d 22. We review a trial court's grant of summary judgment *de novo*. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163, 862 N.E.2d 985, 991 (2007).


¶ 31                    B. Plaintiffs' FOIA Claim
¶ 32    Plaintiffs argue that the trial court erred by granting summary judgment in the Agency's favor because the uncontested facts show that the Agency violated FOIA by not providing

the requested public records as statutorily mandated. We agree.

¶ 33    Section 1 of FOIA states, as follows:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." 5 ILCS 140/1 (West 2010).

¶ 34    In concert with the aforementioned policy, section 3(a) of FOIA provides that "[e]ach public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of this Act." 5 ILCS 140/3(a) (West 2010). Where such a request for public records is made, section 3(d) of FOIA mandates that "[e]ach public body shall, promptly, either comply with or deny a request for public records within [five] business days after its receipt *** unless the time for response is properly extended" (5 ILCS 140/3(d) (West 2010)). See 5 ILCS 140/3(e) (West 2010) (outlining the circumstances under which a public body may extend the deadline for FOIA request compliance an additional five business days).

¶ 35    In this case, the Agency, in its answer to plaintiffs' March 12, 2012, complaint for declaratory and injunctive and declaratory relief expressly admitted that it failed to comply with section 3(d) of FOIA with regard to plaintiffs' November 2011 request for WRB's pending pollution-control-facility applications. In addition, the record shows that with regard to plaintiffs' March 2, 2012, FOIA request, the Agency did not provide that information until sometime during the first week of April 2012, which surpassed the five-day limit.

¶ 36    Notwithstanding its admitted and demonstrated failure to comply with section 3(d) of FOIA, the Agency contends that this court should affirm the trial court's grant of summary judgment in its favor because plaintiffs (1) did not have standing to assert count I, (2) forfeited any argument regarding the trial court's rationale for granting summary judgment, and (3) were not entitled to relief because the Agency eventually complied with FOIA.

¶ 37    The Agency's standing claim is predicated on section 11(a) of FOIA, which provides that "[a]ny person denied access to inspect or copy any public record by a public body may file suit for injunctive or declaratory relief." 5 ILCS 140/11(a) (West 2010). In this regard, the Agency asserts that because plaintiffs' March 2012 FOIA request was submitted by an attorney, who did not indicate that it was being brought on plaintiffs' behalf, plaintiffs did not have standing to bring their claim. The record contradicts the Agency's assertion.

¶ 38    As we have previously noted, the parties filed cross-motions for summary judgment, and, in doing so, the parties agreed that no genuine issue of material fact existed as to the controversy presented and each was entitled to judgment as a matter of law. Therefore, the sole question pending is–based on the record before us–did the Agency comply with or violate FOIA when processing the *plaintiffs'* request for public information. Moreover, we note that the March 2012 FOIA request submitted by plaintiffs' attorney conveyed the

-7-

following information: "I work for a law firm representing governmental entities. The FOIA request is part of research into properties in their respective municipalities."

¶ 39 We decline to reach the merits of defendants' claim that plaintiffs forfeited any argument regarding the trial court's rationale for granting summary judgment because, as the supreme court has stated, "where the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453, 905 N.E.2d 747, 752 (2009). Moreover, as the plaintiffs correctly note, forfeiture is a limitation on the parties and not on this court, which has a responsibility to achieve a just result and maintain a sound and uniform body of precedent. *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 438, 892 N.E.2d 994, 1005 (2008).

¶ 40 Defendants' remaining claim that plaintiffs were not entitled to relief because the Agency eventually complied with plaintiffs' request is similarly unpersuasive. As we understand the import of defendants' assertion, the Agency can (1) acknowledge receipt of plaintiffs' FOIA request; (2) willfully ignore its statutory duty to either provide or deny the requested information within five business days or request an extension of time if it cannot comply with the five-day mandate; and (3) at its discretion or sometime before an impending civil action, provide the pertinent FOIA information, which negates plaintiffs' request for relief.

¶ 41 In support of its argument, defendants cite *Duncan Publishing, Inc. v. City of Chicago*, 304 Ill. App. 3d 778, 709 N.E.2d 1281 (1999), but defendants' reliance is misplaced. In *Duncan*, 304 Ill. App. 3d at 782, 709 N.E.2d at 1285, the appellate court concluded that once a public body provides the information requested under FOIA, even after a lengthy delay, the controversy over the public body's production of documents ceases to exist. The court continued that although a plaintiff's claim for production of records and information under those circumstances is moot, "its motion for attorney fees, which is ancillary to the underlying action, is not." (Internal quotation marks omitted.) *Id.*

¶ 42 Here, the Agency clearly violated FOIA by not providing the public records plaintiffs requested as statutorily mandated, and the trial court erred by finding otherwise. The majority of plaintiffs' numerous prayers for relief in its March 2012 complaint for declaratory and injunctive relief under count I concerned production of the public information requested. The record shows that the Agency eventually provided plaintiffs those documents, albeit after a delay in violation of the Act. Under *Duncan*, plaintiffs' prayers seeking or concerning production are moot. However, plaintiffs also requested (1) attorney fees under section 11(i) of FOIA (5 ILCS 140/11(i) (West 2010)) and (2) a civil penalty as permitted under section 11(j) of FOIA (5 ILCS 140/11(j) (West 2010)). Therefore, in accord with *Duncan*, plaintiffs' requests for attorney fees and a civil penalty survive.

¶ 43 C. Plaintiffs' Open Meetings Act Claim

¶ 44 Plaintiffs argue that the trial court erred by granting summary judgment in the Agency's favor because the uncontested facts show that the Agency violated the Open Meetings Act. We agree.

¶ 45                    1. *The Scope of This Court's Review*

¶ 46     Prior to reaching the merits of plaintiffs' argument, we first summarize the controversy among the parties to frame our scope of review. As previously explained, the overarching dispute concerns the procedure the Board employed to grant certification of identified WRB infrastructure improvements as pollution control facilities. As framed by the parties, those proceedings took place in the following order: (1) the January 12, 2012, closed session the Board held to consider Roxana's (a) November 2011 motion to reconsider the denial of its two initial petitions to intervene and (b) December 2011 petitions to intervene; (2) the January 19, 2012, open meeting the Board held at which it denied Roxana's motion to reconsider; (3) the January 26, 2012, closed session the Board held to deliberate Roxana's 26 remaining petitions to intervene; and (4) the February 2, 2012, open meeting the Board held at which the Board voted to deny Roxana's remaining petitions to intervene. We limit our review to the procedure the Board employed at those hearings.

¶ 47     We also note that in their brief to this court, plaintiffs argue, alternatively, that the Board's certification procedures violated certain provisions of the Open Meetings Act or the Environmental Protection Act (415 ILCS 5/1 to 7.5 (West 2010)). We limit our discussion to plaintiffs' Open Meetings Act claims, which we find dispositive.

¶ 48            2. *The Pertinent Provisions of the Open Meetings Act*

¶ 49     Based on our aforementioned scope of review, we set forth the pertinent portions of the Open Meetings Act. Section 1 provides, in part, the policy underlying the Open Meetings Act, as follows:

> "It is the public policy of this State that public bodies exist to aid in the conduct of the people's business and that the people have a right to be informed as to the conduct of their business. In order that the people shall be informed, the General Assembly finds and declares that it is the intent of this Act to ensure that the actions of public bodies be taken openly and that their deliberations be conducted openly." 5 ILCS 120/1 (West 2010).

¶ 50     Section 2 of the Open Meetings Act provides guidance concerning meetings of the Board. Specifically, sections 2(a) and 2(b), provide, as follows:

> "(a) Openness required. All meetings of public bodies shall be open to the public unless excepted in subsection (c) and closed in accordance with Section 2a.
>
> (b) Construction of exceptions. The exceptions contained in subsection (c) are in derogation of the requirement that public bodies meet in the open, and therefore, the exceptions are to be strictly construed, extending only to subjects clearly within their scope. The exceptions authorize but do not require the holding of a closed meeting to discuss a subject included within an enumerated exception." 5 ILCS 120/2(a), (b) (West 2010)).

Section 2(c) of the Open Meetings Act delineates 25 different exceptions that permit closed sessions under various scenarios. See 5 ILCS 120/2(c) (West 2010).

¶ 51     Section 2a of the Open Meetings Act provides, in pertinent part, the following guidance:

-9-

"A public body may hold a meeting closed to the public, or close a portion of a meeting to the public, upon a majority vote of a quorum present, taken at a meeting open to the public for which notice has been given as required by this Act. *** The vote of each member on the question of holding a meeting closed to the public and a citation to the specific exception contained in Section 2 of this Act which authorizes the closing of the meeting to the public shall be publicly disclosed at the time of the vote and shall be recorded and entered into the minutes of the meeting." 5 ILCS 120/2a (West 2010).

¶ 52  3. *The Board's Noncompliance With the Open Meetings Act*

¶ 53  With regard to the closed sessions the Board held on January 12, 2012, and January 26, 2012, plaintiffs contend the Board violated the Open Meetings Act by failing to cite the exception authorizing closure. The Board responds that it properly invoked section 2(c)(4) of the Open Meetings Act, which provides as follows:

"(c) Exceptions. A public body may hold closed meetings to consider the following subjects:

* * *

(4) Evidence or testimony presented in open hearing, or in closed hearing where specifically authorized by law, to a quasi-adjudicative body, as defined in this Act, provided that the body prepares and makes available for public inspection a written decision setting forth its determinative reasoning." 5 ILCS 120/2(c)(4) (West 2010).

The Open Meetings Act defines "quasi-adjudicative body" as "an administrative body charged by law or ordinance with the responsibility to conduct hearings, receive evidence or testimony and make determinations based thereon, but does not include local electoral boards when such bodies are considering petition challenges." 5 ILCS 120/2(d) (West 2010).

¶ 54  We reject defendants' claim that the limited exception described in section 2(c)(4), which we strictly construe, applies in this case.

¶ 55  By its plain language, section 2(c)(4) of the Open Meetings Act provides that the Board may conduct a closed session to consider "evidence or testimony" that was "presented in an open or closed hearing" to a "quasi-judicial body" as defined by section 2(d) of the Open Meetings Act. We conclude that given this record, no such evidence or testimony existed that would warrant consideration in a closed session under that exception.

¶ 56  In this case, the subject matter before the Board was approval or disapproval of a tax exemption. Plaintiffs filed numerous petitions to intervene, seeking to protect their interests in the Board proceedings through which WRB sought to minimize its property-tax liability. Indeed, all citizens of the affected municipalities had an interest protected by the overarching policy in this state that the people's business be conducted openly to inform the public. Given that policy, we reject defendants' claim that approval or disapproval of that issue was properly considered in a closed session instead of in the clear sunshine of public scrutiny.

¶ 57  In addition, with regard to the Board's open meetings conducted on January 19, 2012, and February 2, 2012, the Board admitted that it prohibited public comment and did not discuss the merits of plaintiffs' numerous petitions to intervene, in violation of section

2.06(g) of the Open Meetings Act, which provides that "[a]ny person shall be permitted an opportunity to address public officials under the rules established and recorded by the public body." 5 ILCS 120/2.06(g) (West 2010).

¶ 58       Here, the Board's rules restricted the opportunity to address that public body to written filings. After plaintiffs filed numerous petitions to intervene, the Board discussed the merits of plaintiffs' claims–without providing any avenue for elaboration–in closed sessions. The Board then announced its denial of plaintiffs' petitions in an open meeting and in doing so, prohibited plaintiffs from addressing further the Board. The Board's actions not only violated the aforementioned specific sections of the Open Meetings Act but also its overarching purpose. Because we agree with plaintiffs that the trial court erred by granting summary judgment in the Board's favor as to count II, we reverse the court's judgment.

¶ 59       Accordingly, we reverse the trial court's (1) grant of summary judgment in defendants' favor as to counts I and II and (2) denial of plaintiffs' motion for summary judgment as to counts I and II. In so doing, we remand for further proceedings consistent with the guidance contained herein, which includes plaintiffs' pursuit of appropriate remedies.

¶ 60                                III. CONCLUSION

¶ 61       For the reasons stated, we reverse and remand.

¶ 62       Reversed; cause remanded.