2016 IL App (4th) 150419
NOS. 4-15-0419, 4-15-0646 cons.
IN THE APPELLATE COURT
OF ILLINOIS
FOURTH DISTRICT

FILED
May 26, 2016
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| NAVISTAR FINANCIAL CORPORATION, | ) | Appeal from |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| CURRY ICE & COAL, INC.; CURRY READY-MIX | ) | No. 13L177 |
| & BUILDERS' SUPPLY, INC.; CURRY READY | ) | |
| MIX OF CARLINVILLE, INC.; CURRY READY | ) | |
| MIX OF GILLESPIE, INC.; CURRY READY MIX | ) | |
| OF PEORIA, INC.; CURRY READY MIX OF | ) | |
| PAWNEE, INC.; CAPITOL READY-MIX, INC.; | ) | |
| CURRY READY MIX OF JACKSONVILLE, INC.; | ) | |
| CURRY ICE & COAL OF CARLINVILLE, INC.; | ) | |
| CURRY ICE & COAL OF SPRINGFIELD, INC.; | ) | |
| CURRY ICE & COAL OF ILLIOPOLIS, INC.; CUR- | ) | |
| RY ICE & COAL OF PERRYVILLE, INC.; CURRY | ) | |
| ICE & COAL OF OTTAWA, INC.; CURRY ICE & | ) | |
| COAL OF PEORIA, INC.; TROY READY MIX | ) | |
| CONCRETE, INC.; CONSOLIDATED READY MIX | ) | |
| OF MASON CITY, INC.; LIPPOLD & ARNETT, | ) | |
| INC.; M-C TRANSFER, INC.; LIPPOLD & ARNETT | ) | |
| TRANSPORTATION SERVICES, INC.; and BRUCE | ) | |
| GARNER, | ) | Honorable |
|     Defendants | ) | John P. Schmidt, |
| (Capitol Ready-Mix, Defendant-Appellant). | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court with opinion.
Presiding Justice Knecht and Justice Holder White concurred in the judgment and opinion.

**OPINION**

¶ 1 In April 2005, plaintiff, Navistar Financial Corporation (Navistar), entered into an "Interlocking Guaranty" with defendants Capitol Ready-Mix, Inc. (Capitol); and Curry Ice and Coal, Inc. (Curry); as well as defendants Curry Ready-Mix & Builders' Supply, Inc.; Curry

Ready Mix of Carlinville, Inc.; Curry Ready Mix of Gillespie, Inc.; Curry Ready Mix of Peoria, Inc.; Curry Ready Mix of Pawnee, Inc.; Curry Ready Mix of Jacksonville, Inc.; Curry Ice & Coal of Carlinville, Inc.; Curry Ice & Coal of Springfield, Inc.; Curry Ice & Coal of Illiopolis, Inc.; Curry Ice & Coal of Perrysville, Inc.; Curry Ice & Coal of Ottawa, Inc.; Curry Ice & Coal of Peoria, Inc.; Troy Ready Mix Concrete, Inc.; Consolidated Ready Mix of Mason City, Inc.; Lippold & Arnett, Inc.; M-C Transfer, Inc.; Lippold & Arnett Transportation Services, Inc.; and Bruce Garner.  At issue in this appeal is the interlocking guaranty between Navistar and Capitol, in which Capitol agreed to be a guarantor for any then-existing or future debt Curry owed to Navistar.  (The remaining defendants are not parties to this appeal.)

¶ 2        In July 2013, Navistar sued Capitol, claiming that Capitol breached the interlocking guaranty by refusing to reimburse Navistar for Curry's default of several financial loans between Curry and Navistar.

¶ 3        In July and November 2014, Navistar and Capitol, respectively, filed cross-motions for summary judgment pursuant to section 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-1005 (West 2014)).  In December 2014, the trial court entered an order granting summary judgment in Navistar's favor and awarding Navistar $506,567.

¶ 4        In May 2015—after the trial court denied Capitol's motion to reconsider—Capitol timely filed a notice of appeal.  In August 2015, the court granted Navistar's "motion to add fees and costs to judgment order," adding an additional $36,174 to the $506,567 sum the court awarded Navistar.

¶ 5        Capitol appeals, arguing that the trial court (1) erred by granting summary judgment in Navistar's favor (case No. 4-15-0419) and (2) lacked jurisdiction to award Navistar additional fees and costs after Capitol filed its notice of appeal (case No. 4-15-0646).  We affirm.

¶ 6                                    I. BACKGROUND

¶ 7         The following undisputed information was gleaned from the parties' pleadings, depositions, affidavits, and other supporting documents filed in the trial court.

¶ 8         As a condition of entering into leases or extending financing, Navistar required companies to enter into an interlocking guaranty.  In April 2005, Navistar and Capitol signed an interlocking guaranty in which Navistar and Capitol (among others) agreed, in part, to the following contractual provision:

> "Guarantors hereby absolutely and unconditionally guarantee (a) the prompt payment of all monetary obligations of any sort, which any of the Guarantors is now or may hereafter become liable to Navistar ('Monetary Obligations') *** whether pursuant to leases *** or other agreements or instruments *** when such Monetary Obligations become due under such Agreements and (b) the full and timely performance of each and every other obligation of any Guarantor under the Agreements ('Non-monetary Obligations') for which such Monetary Obligations and Non-Monetary Obligations (collectively, 'Obligations').  Guarantors shall be jointly and severally liable with each other Guarantor.  *Guarantors expressly acknowledge that this Guaranty will apply not only to Agreements entered into as of the date hereof, but also to any additional Agreements and all amendments, and schedules and other supplements of any Agreements which are entered into prior to the termination of this Guarantee.*"  (Emphasis added.)

¶ 9        Between July 2005 and December 2008, Navistar executed eight contracts with Curry, which were entitled, "Commercial Loan and Security Agreement" (hereinafter, commercial loans). The financing Navistar extended under the eight commercial loans assisted Curry in acquiring transportation assets for its trucking business.

¶ 10        In July 2013, Navistar sued Capitol (as well as the other identified defendants), claiming, in pertinent part, that Capitol "failed to pay all sums due and owing" for Curry's default of the eight commercial loans. Navistar's suit explained that after Curry's default, Navistar repossessed the equipment Curry purchased and later sold those assets at a public auction, but an outstanding balance of $307,293 remained on the commercial loans. In its prayer for relief, Navistar requested reimbursement of the outstanding balance plus interest, fees, costs, and other equitable relief the trial court deemed just.

¶ 11        In July 2014, Navistar filed a motion for summary judgment pursuant to section 2-1005 of the Code. Appended to Navistar's summary judgment motion was its July 2013 complaint for breach of contract against Capitol, which contained (1) the three-page interlocking guaranty executed between Navistar and Capitol and (2) the eight commercial loans executed between Navistar and Curry. In addition, Navistar appended the affidavit of Lynn Roy, Navistar's retail operations specialist. In November 2014, Capitol filed (1) a motion to strike Roy's affidavit and (2) a cross-motion for summary judgment in which Capitol appended the affidavit of its president, Louis Marcy.

¶ 12        Later that month, the trial court conducted a hearing on the parties' respective motions and, thereafter, took the matter under advisement. In December 2014, the court entered the following order:

"In the instant case, there is no material question of fact to prevent

- 4 -

granting summary judgment in favor of [Navistar] and against \*\*\* Capitol \*\*\*. Based on the pleadings and affidavits, there is no dispute [Capitol] signed the interlocking agreements, agreeing to guarantee payment to [Navistar] should Curry \*\*\* fail to make payment. Nothing on the pleadings alleges fraud in the formation of the various commercial loan[s]. In sum, the pleadings and supporting affidavits show there is no issue of material fact that there was an offer and acceptance; consideration; definite terms of the contract; plaintiff's performance; a breach; and damages from the breach. Summary judgment is entered on behalf of [Navistar] in the amount of $506,567.13 plus continuing interest. The judgment against the defendants is joint and several."

¶ 13        In May 2015—after the trial court denied Capitol's motion to reconsider—Capitol timely filed a notice of appeal. In August 2015, the court granted Navistar's "motion to add fees and costs to judgment order," adding an additional $36,174 to the $506,567 sum the court awarded Navistar.

¶ 14        This appeal followed.

¶ 15                    II. ANALYSIS

¶ 16              A. The Trial Court's Grant of Summary Judgment

¶ 17              1. *Summary Judgment and the Standard of Review*

¶ 18         "Summary judgment is proper when 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Metropolitan Life*

*Insurance Co. v. Hamer,* 2013 IL 114234, ¶ 17, 990 N.E.2d 1144 (quoting 735 ILCS 5/2-1005(c) (West 2010)). "Where the parties file cross-motions for summary judgment, as they did in this case, they agree that only a question of law is involved, and they invite the court to decide the issues based on the record." *Martin v. Keeley & Sons, Inc.,* 2012 IL 113270, ¶ 25, 979 N.E.2d 22. "We review a trial court's grant of summary judgment *de novo.*" *Roxana Community Unit School District No. 1 v. Environmental Protection Agency*, 2013 IL App (4th) 120825, ¶ 30, 998 N.E.2d 961.

¶ 19                                    2. *Capitol's Claims of Error*

¶ 20          Capitol argues that the trial court erred by granting summary judgment in Navistar's favor. Specifically, Capitol contends that (1) the interlocking guaranty was unenforceable because no "meeting of the minds" occurred between Capitol and Navistar, (2) the commercial loans executed between Navistar and Curry superseded the interlocking guaranty between Navistar and Capitol, and (3) Navistar's motion for summary judgment did not sufficiently prove that Navistar and Capitol entered into an interlocking guaranty or establish the damages that the court awarded. We address Capitol's contentions in turn.

¶ 21                    a. Capitol's Meeting-of-the-Minds Claim

¶ 22          Capitol contends that the interlocking guaranty was unenforceable because no "meeting of the minds" occurred between Capitol and Navistar. In support of that contention, Capitol relies on *Williams Nationalease, Ltd. v. Motter*, 271 Ill. App. 3d 594, 648 N.E.2d 614 (1995). We conclude that *Williams* is distinguishable.

¶ 23          In *Williams*, 271 Ill. App. 3d at 595, 648 N.E.2d at 615, Ron Motter, president of Motter Enterprises (Motter), decided to lease additional trucks for his business. Ron submitted an "application for credit" to Williams Nationalease (Nationalease), which listed Ron as Motter's

"principals: officer or partners," and who was "authorized to purchase." *Id*. The credit application provided (1) an "approximate monthly purchases anticipated" of $2,000 to $4,000; (2) minimal information as to the trucks Motter already owned; and (3) employment information for Ron's wife, Kathleen. *Id*. Ron signed the credit application as an "owner or duly authorized officer" of Motter. *Id*. In addition, Ron and Kathleen signed the credit application in their respective individual capacities under the heading "If Corporation, Individually Guaranteed by." *Id*. at 596, 648 N.E.2d at 615. All signatures were dated June 3, 1992. *Id*. at 595-96, 648 N.E.2d at 615-16.

¶ 24 Five days later, Ron—acting as Motter's president—entered into a "Vehicle Lease and Service Agreement" with Nationalease. *Id*. at 596, 648 N.E.2d at 616. The lease agreement included two schedules, which further outlined limitations and service requirements of the leased vehicles. *Id*. Kathleen was not mentioned, nor did she sign the lease agreement or schedules. *Id*. Ron subsequently died, and sometime later, Motter defaulted on its payments to Nationalease. *Id*. Nationalease later sued Kathleen, claiming that she was a guarantor on Motter's debt. *Id*.

¶ 25 In affirming the trial court's judgment, which rejected Nationalease's claim that Kathleen was a guarantor, this court stated as follows:

"We conclude that a guaranty necessarily requires a meeting of the minds and, for there to be such an understanding, the guarantor must know the terms of the obligation which is the subject of the guaranty.

In the present case, the terms of the lease obligations between Nationalease and Motter Enterprises were not in existence

- 7 -

when Kathleen signed her name to the application for credit. Thus, there could not be a meeting of the minds at the time Kathleen signed the application." *Id*. at 597, 648 N.E.2d at 616.

¶ 26 In April 2005—when Capitol signed the interlocking guaranty—the eight commercial loans between Navistar and Curry did not exist. Capitol correctly notes that Navistar disbursed Curry's first commercial loan in July 2005—three months after Capitol signed the interlocking guaranty. From this premise, Capitol posits that pursuant to *Williams*, the interlocking guaranty was unenforceable because no meeting of the minds occurred. We are not persuaded because of the type of guaranty at issue in the instant case.

¶ 27 A guaranty is defined as a promise to pay a debt or perform an obligation—on default of such payment or performance—by a third party who is liable or expected to be liable in the first instance. *CCP Ltd. Partnership v. First Source Financial, Inc.*, 368 Ill. App. 3d 476, 482, 856 N.E.2d 492, 497 (2006). "A guaranty reduces the lender's risk by shifting the risk to a party who 'has a comparative advantage in monitoring or enforcement' of the debtor's duties, while the 'lender has a comparative advantage in liquidity.' " *Id.* (quoting Avery W. Katz, *An Economic Analysis of the Guaranty Contract*, 66 U. Chi. L. Rev. 47, 113 (1999)).

¶ 28 A different type of guaranty—referred to as a continuing guaranty—" 'is a contract pursuant to which a person agrees to be the secondary obligor for all future obligations of the principal obligor to the obligee.' " *TH Davidson & Co. v. Eidola Concrete, LLC*, 2012 IL App (3d) 110641, ¶ 11, 972 N.E.2d 823 (quoting Restatement (Third) of Suretyship and Guaranty § 16 (1996)). The contractual language of the agreement effectuates the intention of the parties to enter into a continuing guaranty. See 20 Ill. L. and Prac., *Guaranty* § 15, at 369-70 (2010) ("Whether a guaranty is a continuing one will depend on the language of the contract, interpreted

according to the intention of the parties as manifested by their writings.").  " Where by the terms of [the] written guaranty it appears that the parties look to a future course of dealing or to a succession of credits, " it is generally considered a continuing guaranty.  *Id*. at 369 (citing *Aetha Plywood & Veneer Co. v. Robineau,* 340 Ill. App. 418, 92 N.E.2d 206 (1950), and other cases; see also *Scovill Manufacturing Co. v. Cassidy*, 275 Ill. 462, 467, 114 N.E. 181, 184 (1916)).  Continuing guaranties of future obligations are valid, binding, and have a long history in Illinois.  See *Mamerow v. National Lead Co.*, 206 Ill. 626, 634, 69 N.E. 504, 507 (1903) (although a guarantor may limit their undertaking in a continuing guaranty, limitations to the duration and sum of a future guaranty are not required as it may guaranty both an unlimited duration and sum).

¶ 29        In this case, the record clearly shows that Capitol and Navistar entered into an interlocking guaranty that contemplated a future course of dealing.  Simply put, the plain meaning of the language of the interlocking guaranty between Capitol and Navistar shows that the parties entered into a continuing guaranty—that is, that Capitol agreed that Navistar could hold Capitol jointly and severally liable for any current or future debts Curry owed to Navistar.

¶ 30        Despite Capitol's reliance, *Williams* does not pertain to the continuing guaranty between Capitol and Navistar.  In *Williams*, this court declined to conclude that the application for credit under scrutiny was a guaranty because it did not involve a promise to pay a specific debt or perform a specific obligation at the time the credit application was signed.  *Williams*, 271 Ill. App. 3d at 597, 648 N.E.2d at 616.  As we have noted, a continuing guarantee necessarily contemplates an unknown future obligation.  Thus, applying the holding of *Williams* to the instant case to overturn the trial court's judgment, as Capitol urges, would defeat the fundamental purpose of a continuing guaranty, which we decline to do.

¶ 31                        b. Capitol's Consumer-Loan Claim

¶ 32    Capitol contends that the commercial loans executed between Navistar and Curry superseded the interlocking guaranty between Navistar and Capitol.  We disagree.

¶ 33    Capitol premises its contention on the following contractual language, which appears just above the signature page of each of the eight commercial loans:

> "Borrower [(Curry)] has read and agrees to all terms, provisions, and conditions contained in this three page Agreement [and] agrees that this Agreement contains the entire agreement between Borrower [(Curry)] and Lender [(Navistar)] relating to this loan for the purchase of the Goods, and supersedes all previous agreements, except as to agreements between Borrower [(Curry)] and Lender [(Navistar)]."

¶ 34    Focusing on the clause, "supersedes all previous agreements, except as to agreements between borrower and lender," Capitol claims the following:

> "Navistar knowingly elected not to even reference the alleged preexisting [interlocking guaranty], much less list its purported guarantors as 'Borrowers' on its own [commercial loan] form document.  In so doing, Navistar invoked the supersedence provision nullifying any claim that Capitol or any other party had an obligation to Navistar relative to the [commercial] loans described *** based on an [interlocking agreement] allegedly entered into [in] April *** 2005, or any other preexisting agreement."

¶ 35    We note that Capitol does not cite any pertinent authority for the conclusion it now urges this court to adopt—that is, that the responsibilities of a guarantor subject to the pro-

visions of a continuing guaranty can be nullified by language contained in a separate financial contract in which the guarantor is not a party thereof. According to Capitol's theory, Navistar required Curry and other businesses to enter into a written contract that Navistar created—that is, a continuing guaranty—in exchange for access to its financial liquidity and then further created loan documents that immediately invalidated those respective guaranties.

¶ 36    We note further that under Capitol's overly broad interpretation, any subsequent commercial loan Navistar executed with any guarantor would have superseded all other prior agreements between Navistar and the remaining guarantors. We reject such an absurd stance. Instead, we conclude that the aforementioned commercial loan provision pertained only to the specific transaction between Navistar and Curry and did not operate to terminate the continuing guaranty between Capitol and Navistar.

¶ 37    c. Capitol's Enforceability and Damages Claims

¶ 38    Capitol contends that Navistar's motion for summary judgment did not sufficiently prove that Navistar and Capitol entered into a continuing guaranty or establish the damages that the trial court awarded. Specifically, Capitol takes issue with the affidavit provided by Roy in support of Navistar's July 2014 motion for summary judgment. We first set forth the pertinent portion of Roy's affidavit, as follows:

> "1.  I make this affidavit voluntarily based on personal
>
> knowledge and my review of the business records of Navistar ***.
>
> If sworn as a witness, I can testify competently to the facts stated
>
> in this affidavit.
>
> ***

- 11 -

3. On or about April 22, 2005, defendants *** entered an Interlocking Guaranty Agreement with [Navistar] pursuant to which all defendants guaranteed payment to [Navistar] for all agreements entered into, by, and between [Navistar] and all other defendants.

4. Subsequent to the Interlocking Guaranty, [Navistar] entered in eight *** contracts with *** Curry ***. The dates and details of all eight contracts are included in [Navistar's] verified complaint.

5. Defendants have defaulted on the Interlocking Guarantee Agreement by failing to remit payments when due to [Navistar].

6. As of October 31, 2013, the amount defendants owe to [Navistar] in connection with the Interlocking Guaranty Agreement is $506,567.14. This includes the original deficiency balance of $307,292.85 as of November 1, 2011, plus interest to October 31, 2013. The per diem in the balance is $186.96. A spreadsheet is attached to this affidavit, which specifies all damages of [Navistar] pursuant to each contract."

¶ 39 As we have previously noted, in November 2014, Capitol filed a motion to strike Roy's affidavit, arguing that Roy's assertions therein were conclusory. Capitol also noted that although Roy claimed that a spreadsheet was attached to her affidavit to substantiate the damages Navistar was requesting, no such spreadsheet was provided. (In its brief to this court, Navistar

- 12 -

acknowledges that the spreadsheet at issue was "inadvertently omitted" from Roy's affidavit.) That same month, Capitol also filed a combined (1) answer to Navistar's July 2014 motion for summary judgment and (2) cross-motion for summary judgment. Attached to that pleading was Marcy's affidavit, in which Capitol's president made the following assertions:

"2. At the time I signed the signature page identified as page 3 of [Navistar's] complaint, it was the only page I was provided.

***

4. I signed the signature page referencing only 'this guaranty' on the belief that it was a guaranty as part of a specific loan to Curry *** for a single purchase. It was never my understanding as an officer *** of Capitol *** that Capitol *** by my signature on the signature page, was agreeing to the terms of the Interlocking Guaranty ***.

* * *

7. *** Capitol *** at no time entered into an agreement with *** Navistar to the terms set out in pages 1 and 2 of [the Interlocking Guaranty]."

¶ 40        Later that month, Navistar filed a (1) combined brief in support of its July 2014 motion for summary judgment and (2) response to Capitol's cross-motion for summary judgment. In addressing Marcy's affidavit, Navistar noted that "[t]o the extent that [Marcy's] affidavit is incorporated in Capitol['s] *** cross-motion for summary judgment, [Navistar] incorporates the affidavit of *** Roy in response." Attached to Navistar's combined filing was the

spreadsheet that Roy inadvertently omitted when Navistar filed its July 2014 motion for summary judgment.

¶ 41        Capitol posits that summary judgment in Navistar's favor was improper because Roy's affidavit did not comply with the requirements of Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013).  We disagree.

¶ 42        Rule 191(a) provides as follows:

> "(a) Requirements.  ***  Affidavits in support of and in opposition to a motion for summary judgment under section 2-1005 of the [Code] *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim, counterclaim, or defense is based; shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto.  If all of the facts to be shown are not within the personal knowledge of one person, two or more affidavits shall be used."  Ill. S. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 43        In its brief to this case, Capitol couches its claim regarding Roy's affidavit by stating that Navistar "predicated its motion for summary judgment upon the affidavit of *** Roy[,] which did not comply with the requirements of *** Rule 191."  Specifically, Capitol claims that with regard to Roy's contractual allegations, she attached neither the April 2005 interlocking guaranty nor the commercial loan documents upon which her claims were based.  In addition,

Capitol also claimed that Roy's statements regarding damages Navistar incurred were conclusions without any factual support.

¶ 44     Despite Capitol's characterization, our review here does not concern the weight that Navistar placed on Roy's affidavit, but instead, the propriety of the trial court's ruling, which granted summary judgment in Navistar's favor as a matter of law.  Our review of the record shows the following undisputed facts based on the parties' properly admitted evidence: (1) in April 2005, Capitol entered into a contractual agreement with Navistar by admittedly signing the interlocking guaranty; (2) between July 2005 and December 2008, Navistar executed eight commercial loans with Curry; (3) Curry subsequently defaulted on the eight commercial loans; (4) by virtue of the plain language of the interlocking guarantee, Capitol was jointly and severally liable for Curry's default; and (5) Navistar suffered a sum certain in damages by virtue of Curry's default.  Thus, we reject Capitol's contention that Navistar's summary judgment motion was deficient so as to preclude the court's award of summary judgment in Navistar's favor.

¶ 45     In so concluding, we note that Capitol attempts to create a genuine issue of material fact by claiming that it was unaware of the specifics requirements of the interlocking guaranty despite its agent's authorizing signature.  However, a person is under a duty to learn or know of the contents of a written contract and the obligations that are undertaken by its execution before affixing an authorizing signature. *All American Roofing, Inc. v. Zurich American Insurance Co.*, 404 Ill. App 3d 438, 447, 934 N.E.2d 679, 687 (2010).  Here, Capitol does not claim that it was deceived or defrauded by Navistar when, in April 2005, it signed the interlocking guaranty.  As such, this court will not entertain as valid any suggestion—made over a decade later—that Capitol was mistaken or misperceived its obligations under the interlocking guaranty.

¶ 46                    B. Capitol's Jurisdictional Claim

- 15 -

¶ 47       As we have previously noted, in May 2015—after the trial court denied Capitol's motion to reconsider—Capitol timely filed a notice of appeal.  In August 2015, the court granted Navistar's "motion to add fees and costs to judgment order," adding additional $36,174 to the $506,567 sum the court awarded Navistar.  Capitol argues that the court lacked jurisdiction to award Navistar additional fees and costs after Capitol filed its notice of appeal.  We disagree.

¶ 48       Generally, "[o]nce the notice of appeal is filed, the appellate court's jurisdiction attaches *instanter*, and the cause of action is beyond the jurisdiction of the circuit court." *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173, 950 N.E.2d 1136, 1142 (2011).  However, the circuit court retains jurisdiction to determine matters "collateral or incidental to the judgment." *Id.* at 173-74, 950 N.E.2d at 1142.  " 'Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from.' " *Moenning v. Union Pacific R.R. Co.*, 2012 IL App (1st) 101866, ¶ 22, 966 N.E.2d 443 (quoting *Town of Libertyville v. Bank of Waukegan*, 152 Ill. App. 3d 1066, 1073, 504 N.E.2d 1305, 1310 (1987)).  Further, collateral or incidental matters "d[o] not affect or alter the issue [.] " from which the notice of appeal was filed. *General Motors*, 242 Ill. 2d at 174, 950 N.E.2d at 1142-43.

¶ 49       In this case, Navistar's motion to add fees and costs to the judgment order was predicated on a fee-shifting provision contained within the interlocking agreement between the parties, which provided that "[i]n the event of the enforcement of this Guaranty by Navistar, Navistar shall be entitled to collect from Guarantors, Navistar's costs of collections and enforcement, including without limitation, reasonable attorney's fees."

¶ 50       We conclude that Navistar's motion to add fees and costs to the judgment was collateral and incidental to the summary judgment ruling that Capitol appealed.  The trial court therefore had jurisdiction to address Navistar's motion.  Accordingly, we conclude that the court

had jurisdiction to hear and decide Navistar's motion despite Capitol having timely filed a notice of appeal.

¶ 51                              III. CONCLUSION

¶ 52          For the foregoing reasons, we affirm the trial court's judgment.

¶ 53          Affirmed.